THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GUS HOOD, Defendant-Appellant.

Second District   No. 2—93—0185

Opinion filed May 17, 1994.

Michael T. Norris, of Law Offices of Michael T. Norris, of Schaumburg, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:

Following a jury trial in the circuit court of Winnebago County, the defendant, Gus Hood, was convicted of first-degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—1 (now codified, as amended, at 720 ILCS 5/9—1 (West 1992))) and sentenced to an extended term of 90 years in prison. On appeal, the defendant contends that: (1) there was no probable cause to arrest him, and the trial court therefore erred in denying his motion to suppress two statements he subsequently made to police; (2) he was denied the effective assistance of counsel because his trial counsel failed to: (a) make an offer of proof to preserve error when objections to trial counsel's questions were sustained; (b) move for a directed verdict; and (c) poll the jury; and (3) the trial court erred when it sentenced him to a longer term of imprisonment than a codefendant who pleaded guilty to the first-degree murder. We affirm.

At approximately 5:25 a.m. on February 24, 1992, the defendant was arrested for the murder of Charles Meehan, who had been found submerged in a creek near the Orton Keyes housing project earlier that morning. An autopsy revealed that the cause of death was from drowning, but that Meehan also had bruises on his forehead, nose, chin, forearm, left eye, right lower chest, back of the scalp, back of the left arm and left hand. He also had several fractured ribs and two areas of hemorrhage in the brain caused by blunt trauma to the head.

At the police station, the defendant made his first written statement at 9:52 a.m. on February 24. The defendant stated that on February 21 he and two friends, Craig Zellman and "Crazy" (Dewayne Crossen) got into a fight with Meehan in Crazy's apartment. The defendant said that he punched Meehan in the nose, Zellman punched Meehan in the back and head, and Crazy kicked Meehan in the ribs and pulled his hair. They subsequently escorted Meehan down to his car, where Crazy got into the driver's seat, Zellman entered the front passenger seat, and the defendant and Meehan sat in the backseat. They drove to a street behind Orton Keyes, ended up

by a creek, and again started fighting with Meehan. The defendant and Meehan fell into the water, and Zellman and Crazy proceeded to hit and kick Meehan while he was in the water. The defendant got up and walked back to the car, leaving Crazy, Zellman and Meehan. Later, Crazy and Zellman returned to the car and they drove away. They stopped somewhere in Orton Keyes and Crazy traded the car for three bags of cocaine. The three of them then returned to Crazy's apartment and got high on the cocaine. The next morning, the defendant told his girlfriend, Connie Gullickson, what had happened, and he and Connie walked down to the creek. Connie saw the body in the creek, but he did not. The defendant stated that altogether, in both fights, he hit Meehan "maybe ten times."

The defendant signed a second statement at 3:01 p.m. on February 24. In this statement, the defendant said that when he and Meehan were in the creek, Crazy told him to keep Meehan under the water. The defendant admitted that he held Meehan face down under the water and that when Meehan stopped moving, he, Crazy and Zellman left.

Prior to trial, the defendant moved to suppress the two statements he made to the police on the ground that they were the product of an illegal arrest made without probable cause. At the hearing on the motion to suppress, the testimony established that on February 23 Detectives Robert Redmond and Steven Johnson were told by Lieutenant Gambini, the detective division commander, that a woman named Penny Abramson may have some information about a possible homicide. Redmond spoke with Abramson by phone, and she stated that her daughter, Melinda Byard, had told her that an "ugly man" had been beaten and the body dumped somewhere. At about 3:45 p.m. on February 23, Redmond and Johnson spoke with Byard in person. She denied any knowledge of a homicide, but expressed concern about a man named Chuck who had been staying at a homeless shelter with her. Byard stated that she had last seen Chuck on the night of February 21 at Crazy Dewayne Crossen's apartment. She also recalled that the defendant and Crazy had gotten into a "pretend fight" that night.

Detective Johnson ran Byard's name through the computer system to see what addresses had been associated with her. The computer printout revealed the defendant's name and an address at 2809 Echo Street. Detectives Redmond and Johnson went to 2809 Echo Street at approximately 4:30 p.m. on February 23 and were met at the door by a man and a woman. The officers asked to speak with the defendant, but they left after being told that the defendant was not there.

At approximately 4 a.m. on February 24, Redmond and Johnson were called back to work and told that a woman named Terry Neal had come to the police station and reported that the defendant had stabbed someone to death and dumped the body behind the Orton Keyes housing project. Sergeant Stephen Pirages testified that Neal had received her information from the defendant's girlfriend, Connie Gullickson, but Detective Johnson testified that he thought Neal received the information from Craig Zellman's wife, Vanessa Zellman. Police officers subsequently found Meehan's body lying in a creek behind Orton Keyes. Sergeant Pirages testified that Meehan had a long red mark on the abdomen area which made it appear as if he had been stabbed, but that the mark was in fact a severe abrasion, not a stab wound.

At approximately 5:25 a.m. on February 24, Lieutenant Gambini, Sergeant Pirages, Detectives Redmond and Forrester, and Officers Clark and Oswald went to 2809 Echo Street. They did not have a warrant for the defendant's arrest. Sergeant Pirages knocked on the front door several times and identified himself as a police officer. Craig Zellman answered the door and Pirages asked if they could come inside. Zellman opened the door and allowed the officers to enter the residence.

Sergeant Pirages asked Zellman if he was home alone, and Zellman answered that his wife, Vanessa, was upstairs. Pirages asked if the defendant was there. At that point, Vanessa Zellman was walking down the stairs. Craig Zellman looked at his wife and said "you tell him." Pirages and Oswald suddenly heard some movement coming from the upstairs, and Oswald and Clark ran up the stairs and located the defendant on the second floor. The defendant was handcuffed and transported to the police station.

■ The trial court denied the defendant's motion to suppress, ruling that the officers had probable cause to arrest him and that his subsequent statements were therefore not the tainted "fruit" of an illegal arrest. The defendant appeals, contending that the information received from Melinda Byard and Terry Neal was not enough to establish probable cause to arrest. The defendant argues that Byard had not accused him of criminal activity and that Terry Neal's statement that he had stabbed a man and dumped the body behind Orton Keyes was hearsay evidence based upon information Neal received either from Connie Gullickson or Vanessa Zellman. The State correctly argues, though, that the defendant waived this issue by not raising it in his motion for a new trial. See *People v. Enoch* (1988), 122 Ill. 2d 176.

Nor was any plain error (134 Ill. 2d R. 615(a)) committed such

that we should reverse the trial court despite the defendant's failure to raise the issue in his post-trial motion. Probable cause to arrest exists when the totality of the circumstances known to the officers is such that a reasonable prudent person would believe that the suspect is committing or has committed a crime. (*People v. Scott* (1993), 249 Ill. App. 3d 597, 601.) The probability of criminal activity, not proof beyond a reasonable doubt, is required. (*Scott*, 249 Ill. App. 3d at 601.) Whether probable cause is present is governed by commonsense considerations (*Scott*, 249 Ill. App. 3d at 601), and may be founded upon evidence not admissible at trial, including hearsay. *People v. Tisler* (1984), 103 Ill. 2d 226, 237.

The information relied upon to establish probable cause must generally be supported by some "indicia of reliability." (*People v. James* (1987), 118 Ill. 2d 214, 222, *cert. denied* (1988), 484 U.S. 1045, 98 L. Ed. 2d 866, 108 S. Ct. 780; *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.) Traditionally, information received from private citizens (sometimes referred to as "citizen-informants") was considered presumptively reliable and not subject to the same scrutiny as that received from an informer from the criminal milieu, who is paid for his information. (See *People v. Hall* (1987), 164 Ill. App. 3d 770, 776; *People v. Mitchell* (1984), 123 Ill. App. 3d 868, 874-75.) However, in *People v. Adams* (1989), 131 Ill. 2d 387, our supreme court stated that although the basis of the information (*i.e.*, whether it is based upon being a citizen or a paid informant) is relevant to the probable cause determination, "the rigidity embodied in the presumptions concerning the classifications is no longer applicable. *** Thus, based on an evaluation of all of the information available, including the source of the information, the question is one of whether there is probable cause to believe that the individual in question is involved in criminality." *Adams*, 131 Ill. 2d at 398.

The totality of the circumstances known to the officers in this case was such that a reasonable, prudent person would believe that the defendant had committed a crime. The defendant's name came up twice, once from Melinda Byard and once from Terry Neal, in connection with the disappearance and possible murder of a man named Chuck. Byard and Neal were identified citizen-informants with no motive to lie. The reliability of their statements was further supported when the police officers independently verified Neal's claim that the body had been dumped behind the Orton Keyes housing project, and they learned that the deceased's name was Charles Meehan. (See *People v. Williams* (1991), 147 Ill. 2d 173, 210 (substantial corroboration supports an inference that a third party's story is reliable); *James*, 118 Ill. 2d at 225 (the independent verification of a

substantial part of a third party's statement supports its reliability, even if there was no independent verification that the defendant was involved in the criminal conduct).) We find that the information provided by Neal and Byard was sufficient to establish probable cause to arrest.

Dunaway v. New York (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248, cited by the defendant in support of his argument that the officers lacked probable cause to arrest him and; therefore, his later incriminating statements were not admissible at trial, is inapposite. There, a police informant told a detective that James Cole had said that he and someone named "Irving" had been involved in a crime. The informant did not know "Irving's" last name, but identified a picture of the defendant from a police file. After hearing this information, another detective interviewed Cole, who was in jail pending an indictment for burglary. Cole denied any involvement in the crime but stated that he had been told about the crime two months earlier by another inmate, Hubert Adams. According to Cole, Adams had said that his younger brother, Ba Ba Adams, had told him that he and a fellow named "Irving" had been involved in the crime. (Dunaway, 442 U.S. at 203 n.1, 60 L. Ed. 2d at 829 n.1, 99 S. Ct. at 2251 n.1.) Based on this information, the police took the defendant into custody, where he later made incriminating statements which were admitted at his trial.

On appeal to the Supreme Court, the State of New York conceded that the police lacked probable cause to arrest, but argued that the defendant's seizure could be justified by a mere "reasonable suspicion." (Dunaway, 442 U.S. at 211, 60 L. Ed. 2d at 835, 99 S. Ct. at 2256.) The Supreme Court disagreed, and it held that the defendant's incriminating statements which were made as a result of his illegal detention were not admissible at trial. Dunaway, 442 U.S. at 219, 60 L. Ed. 2d at 840, 99 S. Ct. at 2260.

The defendant in this case argues that the information upon which the police relied in arresting him is similar to the information in Dunaway which did not constitute probable cause. We disagree. In Dunaway, the officers received their information from an informant from the criminal milieu, not a citizen informant. Moreover, when the police interviewed James Cole, the alleged source of the information, he did not confirm that the defendant was the person named "Irving" who had been involved in the crime. The police made no further effort to determine the reliability of their information prior to taking the defendant into custody. In contrast, the police in this case independently verified substantial parts of Melinda Byard's and Terry Neal's statements identifying the defendant as a suspect in a

homicide. Unlike *Dunaway*, the trial court did not err in determining that the police officers had probable cause to arrest the defendant.

■ The defendant next contends that the motion to suppress should have been granted because even if probable cause was present, the fourth amendment prohibits the police from making a warrantless, nonconsensual entry into a residence to effect a routine felony arrest in the absence of exigent circumstances. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.) The State correctly argues, though, that the defendant has waived this issue by not raising it either during the hearing on the motion to suppress or in his post-trial motion. See *Enoch*, 122 Ill. 2d 176.

Nor do we find any plain error (134 Ill. 2d R. 615(a)). The uncontradicted testimony at the hearing on the motion to suppress established that the arresting officers were given permission by Craig Zellman, who lived in the residence at 2809 Echo Street, to enter. The defendant contends that Zellman did not give the officers permission to go upstairs and arrest the defendant and that there were no exigent circumstances justifying a warrantless arrest. However, in *People v. Bean* (1981), 84 Ill. 2d 64, *cert. denied* (1981), 454 U.S. 821, 70 L. Ed. 2d 93, 102 S. Ct. 106, our supreme court held that once officers are given consent to enter a residence by a person who has control over the premises, they should not be required to wait for the person whom they wish to arrest (and who might be armed) to approach them or possibly attempt to escape. In *Bean*, police officers had probable cause to arrest the defendant for armed robbery. The officers (who did not have a warrant) were allowed into the defendant's apartment by his mother. (*Bean*, 84 Ill. 2d at 70.) Once inside, without asking for any further permission, one of the officers ran past her to the defendant's bedroom and arrested him. (*Bean*, 84 Ill. 2d at 70.) Our supreme court held that there was no fourth amendment violation since the entry was consensual and the officers had probable cause to arrest. (*Bean*, 84 Ill. 2d at 70.) Similarly, there is no violation of the fourth amendment in this case since the officers had probable cause to arrest the defendant and they were allowed into the residence by a person who had control over the premises.

■ The defendant next argues that he was denied the effective assistance of counsel. In order to succeed on a claim of ineffective assistance of counsel, the defendant must show that his counsel's representation fell below an objective standard of reasonableness and deprived him of a trial " 'whose result is reliable.' " (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061, quoting *Strickland v. Washington*

178

(1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) The defendant must also demonstrate sufficient prejudice that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*Albanese*, 104 Ill. 2d at 525, quoting *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) If the ineffective assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, the court need not decide whether his counsel's errors were serious enough to constitute less than reasonably effective assistance. *People v. Caballero* (1992), 152 Ill. 2d 347, 365.

The defendant first claims that his trial counsel was ineffective for failing to make an offer of proof to preserve error when the trial court sustained objections to questions about the defendant's state of mind at the time he was giving his second written statement to police. However, the record indicates that the trial court subsequently allowed the defendant's trial counsel to question the defendant about his state of mind at the time he was giving his second written statement; therefore, the defendant was not prejudiced by his trial counsel's failure to make an offer of proof when the trial court initially sustained objections to those questions.

The defendant next contends that his trial counsel was ineffective for failing to move for a directed verdict either at the close of the State's case or at the close of all the evidence. However, the defendant has not attempted to demonstrate that the State's case was legally insufficient, and we are therefore unable to understand how the outcome would have been changed had defense counsel made this motion. See *People v. Caballero* (1989), 126 Ill. 2d 248, 268; *People v. Miszkiewicz* (1992), 236 Ill. App. 3d 411, 426 (a claim of ineffective assistance of counsel for failure to move for a directed verdict has no merit when the defendant does not challenge the legal sufficiency of the State's case).

The defendant next argues that his trial counsel was ineffective for failing to poll the jury after they returned the verdict. Although the defendant is correct that the right to poll the jury is "substantial" (*People v. Herron* (1975), 30 Ill. App. 3d 788, 791), that right may still be waived (*People v. Carter* (1980), 85 Ill. App. 3d 818, 827). The waiver of the right to poll the jury does not constitute ineffective assistance of counsel. *Carter*, 85 Ill. App. 3d at 827.

■ The defendant's final argument is that his sentence of 90 years' imprisonment is excessive when compared with the 40-year sentence Dewayne Crossen received after pleading guilty. However, we have held that a sentence entered after a guilty plea does not provide a valid basis of comparison to a sentence imposed after a trial. (*People*

*v. Garcia* (1992), 231 Ill. App. 3d 460, 479.) "The trial court may properly grant leniency to a defendant who, through his plea, has ensured prompt application of correctional measures to him or her, acknowledged his or her guilt, demonstrated a willingness to accept responsibility for his or her conduct, and cooperated in the successful prosecution of others." *Garcia*, 231 Ill. App. 3d at 479.

At the defendant's sentencing hearing, the trial court read the presentence report and victim impact statement and heard evidence in mitigation and aggravation. The court determined that the defendant was eligible for an extended-term sentence because the murder was accompanied by a beating administered by the defendant, De-Wayne Crossen, and Craig Zellman which constituted exceptionally brutal or heinous behavior indicative of wanton cruelty (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(b)(2) (now 730 ILCS 5/5—3.2(b)(2) (West 1992))), and it sentenced the defendant to 90 years in prison. The defendant does not argue that the trial court erred in determining that he was eligible for an extended-term sentence, or that the 90-year sentence is an abuse of discretion based upon the aggravating and mitigating factors. Accordingly, the defendant's 90-year sentence is affirmed.

For the foregoing reasons, we affirm the trial court.

Affirmed.

COLWELL and PECCARELLI, JJ., concur.