## STATE OF CONNECTICUT *v.* J.R.[1]
### (AC 21053)

Dranginis, Bishop and Daly, Js.

Argued February 22—officially released May 14, 2002

*Joseph Visone*, special public defender, for the appellant (defendant).

[1] To protect the privacy of the victim and in keeping with the spirit of General Statutes § 54-86e, we refer to the defendant as J.R.

*Bruce R. Lockwood,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Cara F. Eschuk,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, J.R., appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70, three counts of sexual assault in the second degree in violation of General Statutes § 53a-71, two counts of sexual assault in the third degree in violation of General Statutes § 53a-72a and two counts of risk of injury to a child in violation of General Statutes § 53-21. The defendant claims that the court improperly (1) denied his timely request to poll the jury and (2) admitted into evidence hearsay testimony. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During her early childhood, the victim, a biological daughter of the defendant, lived in Puerto Rico with her grandmother. At the age of eight, the victim moved to Waterbury and lived with the defendant, her stepmother and her two half-siblings. In 1992, when she was eleven years old, the victim was sexually abused by the defendant. The sexual abuse continued over the next four years while her stepmother was at work.

In 1997, the victim reported the abuse to a counselor at her school. The counselor contacted investigators at the department of children and families (department), who notified the police. The defendant subsequently was arrested and charged with nine counts of sexual misconduct. Thereafter, a jury found the defendant guilty of all nine counts, and the court sentenced him to a total effective sentence of forty-three years imprisonment, execution suspended after twenty-three years, and fifteen years probation. This appeal followed.

## I

The defendant first claims that the court improperly denied his timely request to poll the jury. We disagree.

On December 3, 1999, after the jury returned a verdict finding the defendant guilty of all nine counts, the court queried the foreman regarding the defendant's guilt on each separate count. The clerk then asked the jurors to listen to their verdict as it was accepted and recorded, and the following colloquy ensued:

"The Clerk: So say you, Mr. Foreperson?

"[Foreperson]: Yes.

"The Clerk: So say you all?

"The Jury: Yes.

"The Clerk: Thank you. You may be seated.

"The Court: You may be seated, Mr. [R.] On behalf of the state of Connecticut and the defense, we thank you very much for your diligent performance of your duties as jurors in this case. You are now excused. I ask you for the final time to adjourn to the jury deliberation room, and I will excuse you and have you escorted from the courthouse momentarily."

After the jury left the courtroom, the following exchange took place:

"[Prosecutor]: Your Honor, I'd like to place on [the] record as your clerk asked the final question, '[S]o say you, Mr. Foreperson, so say you all,' that I personally observed each of the jurors individually answering aloud, 'yes.'

"[Defense Counsel]: Your Honor, under the Practice Book, I'm entitled to have them polled individually.

"[Prosecutor]: Your Honor, that is correct, but the jury is now being dismissed, and that's—

"The Court: You did not request that. And after the verdict was rendered, before I accepted it and ordered it recorded, I specifically paused and watched you in order to give you an opportunity to do that.

"[Prosecutor]: But I would just indicate as I said for the record that I did—I particularly took note of that because of the issue of jury polling, and I was able to observe each of the jurors verbally say, 'yes.' I'm not sure that that would have been picked up by the monitor, and that's why I wanted to put it on the record.

"The Court: Thank you.

"[Prosecutor]: Your Honor, may we go on from that? The state has a motion in this case.

"The Court: Yes."

The defendant did not object and made no further comment on the matter.

On February 13, 2001, the defendant filed a motion seeking to rectify a portion of the trial transcript concerning the verdict. The defendant requested that the court reporter be ordered to listen to the audiotapes of the December 3, 1999 proceedings "to clarify if the jurors were still in the jury deliberation room, waiting to be excused by the judge and escorted from the court[-house] . . . when defense counsel stated that he was 'entitled to have them polled individually.' " The court denied the motion because the defendant did not allege that the transcript was incorrect and because he was improperly seeking "an order of the court directing the court reporter to create a record based upon her personal recollection of the proceedings of December 3, 1999."

On February 15, 2001, the defendant filed a motion for articulation requesting that the court "articulate [its] decision denying defense counsel's request for a polling

of the jury that was made after the jury had returned its verdict in open court and before the jury had been dispersed." The court responded in a written memorandum of decision that "the defendant never asked the court to poll the jury, either before or after the verdict was rendered. Therefore, the court has nothing to articulate . . . ."

Practice Book § 42-31 provides in relevant part: "After a verdict has been returned and before the jury have been discharged, the jury shall be polled at the request of any party or upon the judicial authority's own motion. The poll shall be conducted by the clerk of the court by asking each juror individually whether the verdict announced is such juror's verdict. . . ." "[P]ursuant to [Practice Book] § 42-31, a trial court's obligation to poll the jury upon a timely request from either party is mandatory." *State* v. *Pare*, 253 Conn. 611, 621, 755 A.2d 180 (2000).

The issue of whether the court correctly concluded that the defendant never requested a jury poll presents a mixed question of fact and law. *State* v. *Cobb*, 251 Conn. 285, 357, 743 A.2d 1 (1999). The court was in a unique position to draw its factual impressions from its observation of the demeanor of counsel and the flow of conversation during the colloquy after the jury had left the courtroom. See *State* v. *Lipscomb*, 258 Conn. 68, 74, 779 A.2d 88 (2001). The determination, however, of whether the words used by counsel constituted a clear and unambiguous request for a jury poll presents a legal question. The scope of our review of the court's determination that counsel did not request a jury poll is, therefore, plenary. *State* v. *Cobb*, supra, 357–59.

We begin by noting that the prosecutor initially raised the issue of how the individual jurors may have voted when she stated that she had "personally observed each of the jurors individually answering aloud yes." Only

then did defense counsel comment that under the rules of practice he was "entitled" to have the jurors polled individually. We conclude that, under the circumstances, the court's response to defense counsel's remark was not the denial of a request to poll the jury, but merely reflected the court's understanding that counsel never asked the court to poll the jury after the verdict was rendered and before it was accepted and recorded. Moreover, nothing further was said to indicate that defense counsel's remark should be construed as a request. Counsel for the defendant did not ask to bring the jury back, did not ask for a ruling and did not take issue with the court's response. There also is no evidence in the record that defense counsel requested a poll at any other time during the proceedings.

Furthermore, the court's conclusion comports with long-standing principles of statutory construction that require a statute to be applied according to its plain meaning and as its words direct. *Wendt* v. *Wendt*, 59 Conn. App. 656, 682, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000); *Interlude, Inc.* v. *Skurat*, 67 Conn. App. 505, 516, 787 A.2d 631, cert. granted on other grounds, 259 Conn. 925, 793 A.2d 251 (2002). The principles of statutory construction apply with equal force to the rules of practice. *State* v. *Pare*, supra, 253 Conn. 622.

The term "request," as used in Practice Book § 42-31, is not defined in our rules of practice. "It is well established that, when determining the meaning of a word, it is appropriate to look to the common understanding of the term as expressed in a dictionary. . . . This precept . . . pertains primarily to the situation where no statutory definition is available." (Citation omitted; internal quotation marks omitted.) *State* v. *Spillane*, 255 Conn. 746, 755, 770 A.2d 898 (2001). We, therefore, look to Webster's Third New International Dictionary, which defines the word "request" as "[t]he

act of asking for something . . . an expression of a desire or wish . . . ."

In construing the language of Practice Book § 42-31 according to its plain and ordinary meaning, we conclude that the defendant was required to make a clear and unambiguous request to poll the jury. An expression of entitlement, without more, is not the equivalent of such a request.[2]

Our reasoning in *Solomon* v. *Hall-Brooke Foundation, Inc.*, 30 Conn. App. 129, 619 A.2d 863 (1993), is applicable here. In *Solomon*, the court determined that the plaintiff's request for "such other relief as the court deems necessary and just" was too amorphous to constitute a claim for money damages. (Internal quotation marks omitted.) Id., 134. In reaching that conclusion, the court relied on Practice Book § 285A, now § 5-2, which provides in relevant part that "[a]ny party intending to raise any question of law which may be the subject of an appeal must either state the question distinctly to the judicial authority in a written trial brief . . . or state the question distinctly to the judicial authority on the record . . . . If the party fails to do this, the judicial authority will be under no obligation to decide the question." The court observed that "[a] claim is distinctly raised if it is so stated as to bring to the attention of the court the precise matter on which its decision is being asked. . . . A claim briefly suggested is not distinctly raised." (Internal quotation marks omitted.) *Solomon* v. *Hall-Brooke Foundation, Inc.*, supra, 134. This court ultimately concluded that the trial court's failure to award money damages to the plaintiff was proper because she failed to include in her complaint a specific request for such damages. Id., 134–35.

---

[2] In making that determination, we are mindful that the right to poll the jury is not of constitutional dimension. *State* v. *Pare*, supra, 253 Conn. 623.

Here, as in *Solomon,* the defendant failed to state his alleged request with sufficient specificity to apprise the court of the precise matter on which a decision was being asked. Accordingly, the defendant's remark did not rise to the level of a request, and the court did not treat it as one.

The defendant argues that both the court and the state *understood* defense counsel's remark as a request to poll the jury. The defendant contends that this is evident in the state's response, "[T]hat is correct, but the jury is now being dismissed . . ." and the court's observation that it had given the defendant an opportunity to request a poll of the jury after the verdict was rendered. We disagree.

In denying the defendant's motion for articulation, the court expressly concluded that the defendant "never asked the court to poll the jury, either before or after the verdict was rendered." The court is in the best position to evaluate the circumstances of each case. *LaMontagne* v. *Musano, Inc.,* 61 Conn. App. 60, 64, 762 A.2d 508 (2000). What the state may have believed is irrelevant in light of the fact that only the court is empowered to order a poll of the jurors pursuant to Practice Book § 42-31.

Because the court properly determined that defense counsel did not request that the jury be polled, there is no need to address the defendant's related claim that the request was timely made.

II

The defendant next claims that he was denied his state and federal constitutional rights to a fair trial when the court permitted the state to introduce second and third level hearsay testimony through a department investigator. The defendant seeks review of his unpreserved claim pursuant to *State* v. *Golding,* 213 Conn.

233, 239–40, 567 A.2d 823 (1989), and the plain error doctrine. Practice Book § 60-5.

During its case-in-chief, the state offered the testimony of John Ferrer, an expert in the investigation of child sexual abuse. Ferrer testified that on February 27, 1997, he and a colleague, April Crosby, interviewed the victim at her school. Ferrer also testified that he and Crosby each were required to keep written documentation, referred to as a running narrative, of their work on the case, that prior to the trial he had reviewed that document and that he had brought the document to court to refresh his memory, if necessary. Ferrer then proceeded to describe his conversations with the victim, her stepmother,[3] the school guidance counselor and the defendant. The defendant did not object. Indeed, on cross-examination, defense counsel offered Ferrer's running narrative into evidence as a defense exhibit. Defense counsel also referred to the contents of the narrative during closing argument, when he attempted to establish inconsistencies in the victim's testimony.

The defendant now claims that the following portions of Ferrer's testimony were inadmissible hearsay: (1) two statements by the victim's stepmother that the victim had been missing for some time, (2) a statement by the victim's stepmother that she previously had been told when the victim ran away that she had to wait so many hours before she could call the police, (3) a statement about an anonymous telephone call to the school that the defendant was sexually abusing the victim, (4) a statement by the victim that the defendant made her wear bikini underwear, (5) a statement by the victim's stepmother that the victim's uncle abused the victim when she was eight years old and (6) a

---

[3] Ferrer interviewed the stepmother, who speaks only Spanish, with the assistance of an interpreter.

statement by the victim that the defendant had locked her in her room for getting a bad report card from school.

Under *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) "The first two requirements involve a determination of whether the claim is reviewable; the second two requirements involve a determination of whether the defendant may prevail." *State* v. *Woods*, 250 Conn. 807, 815, 740 A.2d 371 (1999).

The state first argues that the defendant's claim is inadequately briefed because his brief does not comply with the requirements of Practice Book § 67-4 (d) (3), which provides: "When error is claimed in any evidentiary ruling in a court or jury case, the brief or appendix shall include a verbatim statement of the following: the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling." The state points out that the defendant failed to include in his brief or appendix a verbatim statement of the questions and answers he attacks on appeal, but merely paraphrased the relevant testimony and provided transcript citations. The state thus argues that this court should decline to review the defendant's claim.

We agree with the state that the defendant's brief did not include a verbatim statement of the testimony in question. "Generally, this court will not review claims that are improperly briefed. Although we do not condone this failure to adhere to the rules of practice, in this case, however, the subject questions and rulings [were] sufficiently delineated for us to review the [defendant's] claim." *Boretti* v. *Panacea Co.*, 67 Conn. App. 223, 226 n.5, 786 A.2d 1164 (2001), cert. denied, 259 Conn. 918, 791 A.2d 565 (2002).

Under *Golding*, the record is adequate to review the defendant's claim because the disputed portion of Ferrer's testimony is contained in the trial transcript. The claim also is of constitutional magnitude alleging the violation of a fundamental right. Although "[u]npreserved hearsay claims do not automatically invoke constitutional rights to confrontation;" (internal quotation marks omitted) *State* v. *Dixon*, 62 Conn. App. 643, 649, 772 A.2d 166 (2001); "[e]vidence that does not fall within a firmly rooted hearsay exception . . . is inadmissible under the Confrontation Clause absent a showing of particularized guarantees of trustworthiness." *State* v. *Schiappa*, 248 Conn. 132, 159, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). We conclude, however, that the defendant may not prevail under the third prong of *Golding* because he has not established that a constitutional violation clearly exists that clearly deprived him of a fair trial.

During his cross-examination of Ferrer, defense counsel himself offered into evidence Ferrer's running narrative as a defense exhibit. The narrative contained all of the information that the defendant now contends is inadmissible hearsay. "The defendant cannot now claim 'foul' because of the admission of evidence which he allowed in for tactical purposes." *State* v. *Anderson*, 209 Conn. 622, 633, 553 A.2d 589 (1989). Furthermore, in his closing argument, defense counsel again referred

to the material in Ferrer's running narrative when he attempted to establish inconsistencies in the victim's testimony. Having used the document to his advantage, the defendant cannot subsequently argue that testimony on matters described in the running narrative was improper and deprived him of a fair trial. See *State* v. *Hawkins*, 51 Conn. App. 248, 255–56, 722 A.2d 278 (1998).

The defendant also seeks review under the plain error doctrine. "It is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *Solman*, 67 Conn. App. 235, 239, 786 A.2d 1184 (2001), cert. denied, 259 Conn. 917, 791 A.2d 568 (2002).

We conclude that the defendant's claim does not meet the "truly extraordinary" standard for all of the same reasons it does not satisfy the third prong of *Golding*. Accordingly, the defendant may not prevail under the plain error doctrine.

The judgment is affirmed.

In this opinion the other judges concurred.