J.R.[1] *v.* COMMISSIONER OF CORRECTION
(AC 27487)

Flynn, C. J., and McLachlan and Gruendel, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued November 26, 2007—officially released February 19, 2008

*Michael Zariphes*, special public defender, for the appellant (petitioner).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cara F. Eschuk*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, C. J. The petitioner, J.R., appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion in denying certification to appeal and that it improperly rejected his claims that his trial counsel had provided ineffective assistance by failing (1) to introduce into evidence employment records of the petitioner, (2) to introduce a psychological report of the victim, (3) to introduce evidence about the lack of a police record regarding the alleged sexual assault of the victim by her uncle and (4) to make a proper request that the jury be polled. We dismiss the petitioner's appeal.

The facts giving rise to this case are set forth in *State v. J.R.*, 69 Conn. App. 767, 797 A.2d 560, cert. denied, 260 Conn. 935, 802 A.2d 89 (2002). "During her early childhood, the victim, a biological daughter of the [petitioner] lived in Puerto Rico with her grandmother. At the age of eight, the victim moved to Waterbury and lived with the [petitioner], her stepmother and her two half-siblings. In 1992, when she was eleven years old, the victim was sexually abused by the [petitioner]. The sexual abuse continued over the next four years while her stepmother was at work.

"In 1997, the victim reported the abuse to a counselor at her school. The counselor contacted investigators at the department of children and families (department), who notified the police. The [petitioner] subsequently was arrested and charged with nine counts of sexual misconduct." Id., 768. After a trial to the jury, the petitioner was convicted of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70, three counts of sexual assault in the second degree in violation of General Statutes § 53a-71, two counts of sexual assault in the third degree in violation of General Statutes § 53a-72 and two counts of risk of injury to a child in violation of General Statutes § 53-21. The court thereafter sentenced the petitioner to a total effective term of forty-three years imprisonment, execution suspended after twenty-three years, and fifteen years probation. The petitioner's conviction was upheld on appeal.

On June 16, 2004, the petitioner filed a second amended petition for a writ of habeas corpus, alleging that his trial counsel, Louis S. Avitabile, had rendered ineffective assistance in several respects.[2] Following a habeas trial, the court rejected the petitioner's ineffective assistance of counsel claims and dismissed the petition. Subsequently, the court also denied the petition for certification to appeal. This appeal followed.

We begin by setting forth the standard of review and legal principles that guide our resolution of the petitioner's appeal. "Faced with a habeas court's denial

---

[2] Specifically, the petitioner claimed that Avitabile was ineffective by failing to introduce the petitioner's employment record and the psychological report on the victim, by failing to introduce evidence about the lack of a police record concerning the alleged sexual abuse of the victim by her uncle, by failing to make a proper request that the jury be polled and by failing to take exception to the trial court's consciousness of guilt charge. The court rejected all of the petitioner's ineffective assistance claims. In this appeal, however, the petitioner does not challenge the court's ruling concerning the consciousness of guilt charge.

of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Falcon* v. *Commissioner of Correction*, 98 Conn. App. 356, 359, 908 A.2d 1130, cert. denied, 280 Conn. 948, 912 A.2d 480 (2006).

"We examine the petitioner's underlying claim[s] of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 90 Conn. App. 420, 424, 876 A.2d 1277, cert. denied, 275 Conn. 930, 883 A.2d 1246 (2005), cert. denied sub nom. *Santiago*

v. *Lantz*, 547 U.S. 1007, 126 S. Ct. 1472, 164 L. Ed. 2d 254 (2006).

"In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . . Accordingly, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim." (Citations omitted; internal quotation marks omitted.) *Griffin* v. *Commissioner of Correction*, 98 Conn. App. 361, 365–66, 909 A.2d 60 (2006).

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct

the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . .

"The second part of the *Strickland* analysis requires more than a showing that the errors made by counsel may have had some effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Citation omitted; internal quotation marks omitted.) *Crocker* v. *Commissioner of Correction,* 101 Conn. App. 133, 136–37, 921 A.2d 128, cert. denied, 283 Conn. 905, 927 A.2d 916 (2007). Having set forth the applicable legal principles, we now address the petitioner's claims in turn.

I

The petitioner first claims that the court abused its discretion in denying his petition for certification to appeal with respect to his claim that he received ineffective assistance of counsel as a result of Avitabile's failure to introduce the petitioner's employment records into evidence. The petitioner argues that the employment records should have been used to impeach the

victim's testimony concerning the time at which the sexual assaults allegedly occurred and to support an alibi defense.[3] We are not persuaded.

The following additional facts are relevant to our resolution of the petitioner's claim. At the petitioner's criminal trial, the victim testified that, beginning in 1992, the petitioner would sexually abuse her on a regular basis when he returned home after work and while her stepmother was at work. The victim also testified that the petitioner had sexually assaulted her on February 17, 1997, "around 5 or 6" p.m. when the he returned home from work.

During the habeas trial, the petitioner testified that prior to his arrest, he had been employed at LesCare Kitchens. The petitioner further stated that when he had commenced his employment at LesCare Kitchens, his hours were from 6 a.m. to 5 p.m. At some point, the petitioner's schedule changed, and he instead worked the 7 a.m. to 4 p.m. shift. Additionally, the petitioner called Patricia Larrivee, the payroll manager of LesCare Kitchens, as a witness. According to Larrivee, the payroll records reflected that, on or about February, 1997, the petitioner had been an employee of LesCare Kitchens. Larrivee also stated that, although the attendance sheet showed that the petitioner had worked on February 17, 1997, the records did not reflect the hours that he had worked that day. Larrivee's testimony also indicated that employees either worked the 7 a.m. to 3:30 or 4 p.m. shift or the 6 a.m. to 5 p.m. shift.

Avitabile testified at the habeas trial that he had discussed the possibility of presenting an alibi defense

---

[3] In his brief, the petitioner also claims that Avitabile conducted an inadequate cross-examination of the victim because he failed to "question [the victim] as to more specific dates and times of day as to her allegations against the petitioner." Because this claim was not raised in the second amended petition for a writ of habeas corpus, we decline to review it. See *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 181, 774 A.2d 148 (2001).

with the petitioner but that, because the petitioner was charged with having sexually assaulted the victim on multiple occasions that spanned a period of time from November, 1992, to February, 1997, such a defense would have been untenable. Avitabile acknowledged that one of the charges concerned a specific date, namely, February 17, 1997. However, because the victim's testimony indicated that the sexual assaults occurred when the petitioner returned home after work, Avitabile testified that the employment records, including the February 17, 1997 record, would have had little impeachment value and would not have supported an alibi defense.

The court found that the petitioner failed to carry his burden of proof under *Strickland* as to his allegation that Avitabile should have introduced the employment records into evidence. In its memorandum of decision, the court found that "[t]he state had charged the petitioner with committing these crimes on an unspecified date within a range of dates." The court also found that "given the range and diversity of the dates, it would have been virtually impossible" to have used the employment records to establish a successful alibi defense. The court concluded that "it was a sound tactical decision on the part of trial defense counsel to forgo this avenue."

After reviewing the record, including the victim's trial testimony and the testimony from the witnesses at the habeas trial, we agree with the court that the petitioner failed to rebut the strong presumption that Avitabile's performance fell within the wide range of reasonable professional assistance. See *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 300, 776 A.2d 461, cert. denied, 258 Conn. 902, 782 A.2d 136 (2001). Accordingly, the petitioner's allegation that Avitabile rendered ineffective assistance in failing to use the employment records is without merit, and we need not analyze the petitioner's claim under the prejudice prong

of *Strickland.* See *Johnson* v. *Commissioner of Correction,* 218 Conn. 403, 428–29, 589 A.2d 1214 (1991). We conclude that the court properly denied the petition for certification to appeal on this ground.

II

The petitioner next asserts that the court abused its discretion with respect to his ineffective assistance of counsel claim, in which he alleged that Avitabile's representation was deficient because he failed to introduce a psychological report on the victim that was written by Sidney Horowitz, a clinical psychologist, to impeach the victim's trial testimony.[4] We do not agree.

At the habeas trial, Avitabile testified that he had received the psychological report during the petitioner's criminal trial and that he had reviewed its contents. Avitabile also testified that he had made a sound tactical decision not to introduce the psychological report into evidence. Specifically, Avitabile's testimony indicated that the information in the psychological report that referred to when the sexual abuse occurred was not wholly inconsistent with other evidence that was before the jury. In addition, Avitabile testified that the report contained possible psychological explanations for the victim's disjointed trial testimony that he believed would have helped to bolster the state's case. Avitabile, therefore, believed it was better to have the victim's disjointed testimony before the jury without an accompanying explanation.

In its memorandum of decision, the court noted that Avitabile, after reviewing the psychological report, had

---

[4] The petitioner also claims that Avitabile was ineffective in failing to retain his own psychological expert. We, however, decline to review this alleged instance of ineffective assistance of counsel because it was not raised in the petitioner's second amended petition for a writ of habeas corpus. See *Holley* v. *Commissioner of Correction,* 62 Conn. App. 170, 181, 774 A.2d 148 (2001).

concluded that the report would have bolstered the state's case by providing an explanation as to why the victim's trial testimony was disjointed and confused. The court found that Avitabile's decision not to use the psychological report was a sound tactical choice.

We are mindful that "there is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Citation omitted.) *Iovieno* v. *Commissioner of Correction*, 67 Conn. App. 126, 128, 786 A.2d 1113 (2001), cert. denied, 259 Conn. 916, 792 A.2d 851 (2002). In the present case, our review of the record corroborates Avitabile's testimony, and we agree with the court that the decision not to use the psychological report falls within the broad range of reasonable professional assistance.[5] We therefore do not reach the second prong of *Strickland*, which concerns whether the petitioner was prejudiced by the alleged deficiency. Accordingly, we conclude that the court properly rejected the petitioner's claim and denied the petition for certification to appeal on this ground.

## III

The petitioner also claims that the court abused its discretion with respect to his claim that his counsel provided ineffective assistance because he failed to introduce evidence about the absence of a police report regarding the alleged sexual assault of the victim by her uncle. We are not persuaded.

[5] In his brief, the petitioner makes much of the fact that Avitabile did not review the psychological report until after the state had rested its case and that, because of this, Avitabile's decision not to use the psychological report cannot be a strategic choice. We are not persuaded by this argument. Avitabile testified that he did review the report during the trial and that, had he believed that the information in the report needed to be brought out, he would have recalled the victim to the witness stand.

At the petitioner's underlying criminal trial, the victim testified that her uncle had sexually abused her when she was approximately eight or nine years old. The victim also stated that she had informed her uncle's wife,[6] N, of the alleged sexual assault. The victim further testified that she believed that N may have informed the petitioner of the sexual abuse because the police came to the house. According to the victim, the police never spoke with her about the sexual assault concerning her uncle. The jury also heard testimony from N, who stated that the victim never had told her about the sexual abuse allegation involving the uncle.

During the habeas trial, the petitioner called Lieutenant Edward Daponte of the Waterbury police department as a witness. Daponte, who is in charge of all operations pertaining to records, testified that the Waterbury police department did not have a record of a complaint involving the alleged sexual assault of the victim prior to the 1997 report filed in connection with the allegations of abuse by the petitioner. In addition, Daponte stated that when a police officer responds to a call, if a formal complaint is not issued thereafter or if the officer is unable to speak with the child victim, then it is possible that the police would not have a record of the incident.

Avitabile testified at the habeas trial that because the victim's trial testimony had indicated that she informed N of the sexual assault and not the police, he called N as a witness to impeach the testimony of the victim. Avitabile further stated that "the fact [that] the police [did not] have a record of [a formal complaint] wouldn't mean that a complaint wasn't made." The court concluded that the petitioner had failed to demonstrate that Avitabile's decision not to introduce evidence of

---

[6] The record indicates that, rather than being the uncle's wife, N was the uncle's longtime companion and lived with the uncle from 1983 to 1993.

the lack of a police record constituted deficient performance or was prejudicial to the petitioner.

We agree with the court's conclusion that the petitioner failed to establish that Avitabile's performance was lacking because he did not introduce evidence about the absence of a police record regarding the alleged sexual assault of the victim by her uncle. See *Iovieno* v. *Commissioner of Correction*, supra, 67 Conn. App. 128. During the criminal trial, the victim did not testify that she had reported the alleged abuse to the Waterbury police department. Although there was some testimony at the criminal trial indicating that the police may have been present at her home at some point in time, the victim stated that she never spoke with the police about the incident concerning her uncle. In contrast, the victim testified that she had informed N of the alleged sexual misconduct. Therefore, as Avitabile explained, he made the tactical decision to call N as a witness in order to impeach the victim's testimony.

Furthermore, the fact that there was no police record merely would have indicated that the victim did not make a formal complaint about the alleged abuse by her uncle. This evidence, therefore, would have had little or no impeachment value and would have supported the victim's version of events in which she stated that she never spoke with the police about the alleged incident involving her uncle. Accordingly, we conclude that this ground of the petitioner's claim lacks merit.

IV

The petitioner last claims that the court abused its discretion with respect to his claim that he received ineffective assistance of counsel as a result of counsel's failure to make a proper request that the jury be polled. We disagree.

Following the jury's return of a guilty verdict on all nine counts, the court questioned the jury foreman

about the defendant's guilt on each count, and the clerk asked the jurors to listen to their verdict as it was accepted and recorded. The following colloquy then ensued:

"The Clerk: So say you, Mr. Foreperson?

"[Foreperson]: Yes.

"The Clerk: So say you all?

"The Jury: Yes.

"The Clerk: Thank you. You may be seated."

After the jury left the courtroom, the prosecutor stated that she wanted the record to reflect that as the clerk asked the jury the final question, she had "personally observed each of the jurors individually answering aloud, 'yes.'" Avitabile then stated, "Your Honor, under the Practice Book, I'm entitled to have them polled individually," to which the court replied, "you did not request that. And after the verdict was rendered, before I accepted it and ordered it recorded, I specifically paused and watched you in order to give you an opportunity to do that."

In his direct appeal to this court, the petitioner claimed that the trial court improperly had denied Avitabile's timely request to poll the jury. *State* v. *J.R.*, supra, 69 Conn. App. 768. This court, however, concluded that because Avitabile had "failed to state his alleged request with sufficient specificity to apprise the [trial] court of the precise matter on which a decision was being asked," his "remark did not rise to the level of a request . . . ." Id., 774. In light of this court's conclusion that Avitabile failed to request that the jury be polled, the related claim concerning the timeliness of the alleged request was not addressed in the appeal. Id.

The petitioner alleged in his second amended petition for a writ of habeas corpus that Avitabile had rendered

ineffective assistance by failing to make a proper request that the jury be polled. At the habeas trial, Avitabile testified that after the jury foreman had announced the guilty verdict with respect to each count, the clerk asked the jurors if that was their verdict. Avitabile stated that he then observed each of the jurors nod his or her head in agreement with the guilty verdict.

The court concluded that the petitioner had failed to meet his burden of demonstrating how he was prejudiced by Avitabile's failure to request that the jury be polled under *Strickland*. Specifically, the court found that there was "no evidence that [the] jury's verdict was anything other than unanimous."[7]

In his brief to this court, the petitioner contends that our Supreme Court's decision in *State* v. *Pare*, 253 Conn. 611, 755 A.2d 180 (2000), compels the conclusion that, in addressing an ineffective assistance of counsel claim premised on defense counsel's failure to request that the jury be polled, prejudice should be presumed. In *Pare*, our Supreme Court concluded that the trial court improperly had denied defense counsel's timely request to poll the jury and, therefore, determined that an automatic reversal of the judgment was required.[8] Id., 634–

---

[7] The court, in its memorandum of decision, stated that "trial defense counsel did not obtain a polling of the jurors and arguably, this is deficient performance." The court, therefore, did not determine the deficiency of Avitabile's performance and, instead, rejected the petitioner's claim on the ground that the petitioner had failed to satisfy the prejudice prong of *Strickland*.

[8] In his reply brief, the petitioner cites *United States* v. *Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), in which the United States Supreme Court recognized a narrow exception to the prejudice component of the *Strickland* test and held that, in certain limited circumstances, a presumption of prejudice applies to an ineffective assistance of counsel claim "when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate . . . ." Id., 659–60. The court also stated that a showing of prejudice is not required when counsel is either totally absent or prevented from assisting the accused during a critical stage in the proceeding, when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"

35, 639. In so concluding, our Supreme Court explained that "the right to poll the jury, although not constitutional, is nonetheless a substantial right"; (internal quotation marks omitted) id., 631; that is absolute *"if not waived . . . ."* (Emphasis added; internal quotation marks omitted.) Id., 638–39. A trial court, therefore, has a mandatory obligation under Practice Book § 42-31[9] to poll the jury when either party makes a timely request. Id., 621.

The petitioner argues that because our Supreme Court in *Pare* concluded that a court's improper denial of a timely request to poll the jury requires the automatic reversal of the judgment and is not subject to a harmless error analysis, then prejudice should be presumed when counsel fails to request that the jury be polled. The petitioner also refers to the language in *Pare*, in which our Supreme Court stated that "[t]he action of the court [in denying a timely request to poll the jury] work[s] a denial of a right of the accused so fundamental as to require a retrial even though, as clearly appears from the record, the trial was otherwise markedly free from error and the jury's verdict was fully warranted by the evidence." (Internal quotation marks omitted.) Id., 636.

We are not persuaded by the petitioner's argument and conclude that *Pare* does not compel the presumption of prejudice in the present case. First, *Pare* involved

and when a defendant is "denied the right of effective cross-examination." (Internal quotation marks omitted.) Id., 659 & n.25.

The petitioner, however, acknowledges in his reply brief that the exceptions delineated in *Cronic* are inapplicable to the facts of the present case. We agree.

[9] Practice Book § 42-31 provides: "After a verdict has been returned and before the jury have been discharged, the jury shall be polled at the request of any party or upon the judicial authority's own motion. The poll shall be conducted by the clerk of the court by asking each juror individually whether the verdict announced is such juror's verdict. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or they may be discharged."

the *court's* refusal to grant defense counsel's timely request that the jury be polled. Id., 634. Here, this court previously held that Avitabile never made a request to have the jury polled. See *State* v. *J.R.*, supra, 69 Conn. App. 774. Although the right to poll the jury is substantial, it is clear that this right can be waived. See *State* v. *Pare*, supra, 253 Conn. 631, 638. Further, the petitioner does not argue, nor do we conclude, that defense counsel is required in all circumstances to poll the jury, absent some indication that the verdict was not unanimous. However, Avitabile had observed the assent of the jurors to their verdict prior to its acceptance by the court. For the foregoing reasons, we conclude that the circumstances of this case do not warrant the application of presumed prejudice.

Applying the prejudice prong of *Strickland*,[10] we agree with the court that the petitioner has failed to demonstrate that there is a reasonable probability that, absent Avitabile's failure to request that the jury be polled, the fact finder would have had a reasonable doubt respecting the guilt of the petitioner.[11] There is

[10] Because we conclude that the petitioner has failed to satisfy the prejudice prong of *Strickland*, we need not determine whether it constituted deficient performance for Avitabile to fail to make a proper request that the jury be polled. See *Pierce* v. *Commissioner of Correction*, 100 Conn. App. 1, 12 n.5, 916 A.2d 864, cert. denied, 282 Conn. 908, 920 A.2d 1017 (2007).

[11] In reaching this conclusion, we find instructive those sister states that have determined that trial counsel's failure to request a jury poll, under the circumstances presented, did not amount to ineffective assistance. See, e.g., *People* v. *Coddington*, 23 Cal. 4th 529, 656, 2 P.3d 1081, 97 Cal. Rptr. 2d 528 (2000) (no ineffective assistance where record does not reflect that dangers polling seeks to avoid actually occurred), cert. denied, 531 U.S. 1195, 121 S. Ct. 1199, 149 L. Ed. 2d 113 (2001), overruled in part on other grounds by *Price* v. *Superior Court*, 25 Cal. 4th 1046, 1069 n.13, 25 P.3d 618, 108 Cal. Rptr. 2d 409, cert. denied, 534 U.S. 1045, 122 S. Ct. 626, 151 L. Ed. 2d 547 (2001); *Wynn* v. *State*, 228 Ga. App. 124, 129, 491 S.E.2d 149 (1997) (no ineffective assistance where counsel failed to request polling of jury); *People* v. *Hood*, 262 Ill. App. 3d 171, 178, 634 N.E.2d 404 (1994) (no ineffective assistance where right to poll jury waived); *Irving* v. *State*, 441 So. 2d 846, 855 (Miss. 1983) (no ineffective assistance where jury foreman reported unanimous verdict and no indication outcome of proceedings would have

nothing in the record suggesting that the verdict was anything other than unanimous. In fact, during the criminal trial, the prosecutor stated that she had observed each of the jurors answer "yes" when questioned by the clerk about the guilty verdict they had returned. Additionally, Avitabile witnessed the jurors each nod his or her head in agreement with the verdict. Our review of the record reveals that the court properly found that the petitioner failed to offer any evidence that a request for a jury poll would have affected the outcome. We therefore conclude that the petitioner has failed to demonstrate that the court's denial of his petition for certification to appeal reflects an abuse of discretion. See *Simms* v. *Warden*, supra, 230 Conn. 616.

The appeal is dismissed.

In this opinion the other judges concurred.

been altered but for failure to poll jury), cert. denied, 470 U.S. 1059, 105 S. Ct. 1774, 84 L. Ed. 25 834 (1985); *State* v. *Quick*, 659 N.W.2d 701, 717 (Minn. 2003) (no ineffective assistance because failure to poll jury would not have had impact on verdict); *Commonwealth* v. *Williams*, 537 Pa. 1, 30–31, 640 A.2d 1251 (1994) (no ineffective assistance where counsel failed to request jury poll); *State* v. *Eckert*, 203 Wis. 2d 497, 511–12, 553 N.W.2d 539 (App.) (no ineffective assistance where no indication verdict not unanimous), review denied, 207 Wis. 2d 285, 560 N.W.2d 274 (1996).