REVISED, APRIL 3, 2001

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 99-60265
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS


DERWIN RENWICK MCWAINE, also known as Skibow,
Defendant-Appellant.

_____

Appeal from the United States District Court for the Northern
District of Mississippi
_____
January 12, 2001

Before JOLLY and DAVIS, Circuit Judges, and RESTANI, Judge.[1]

W. EUGENE DAVIS, Circuit Judge:

McWaine challenged his convictions and sentence on multiple drug trafficking, firearms, and money laundering offenses. We affirm his convictions, but remand for resentencing.

I.

Derwin McWaine was indicted in February of 1998 and charged with conspiracy to distribute crack cocaine, possession of marijuana with intent to distribute, possession of firearms as a prior convicted felon, possession of a firearm with an obliterated serial number, and nine counts of money laundering. The

---

[1]Judge of the U.S. Court of International Trade, sitting by designation.

government's evidence at trial against McWaine was overwhelming. Government agents testified that they conducted surveillance of McWaine's activities for several years revealing criminal drug activity. The government produced a videotape of McWaine wiring substantial sums of money by Western Union using fictitious names. Finally, at least four co-conspirators testified that they were involved in the sale of drugs with McWaine.

McWaine was convicted on all counts and was sentenced to life in prison for the cocaine conspiracy, twenty years each on eight of the nine money laundering charges, ten years for possessing a firearm as a felon, five years for the possession of marijuana, and five years for possession of the firearm with an obliterated serial number. The sentences on the various counts were ordered to run concurrently. McWaine now appeals his convictions and sentence.

II.

Appellant first argues that numerous instances of prosecutorial misconduct at trial require that he be granted a new trial. Among the alleged wrongdoings are the following: the prosecutor was present at the search, which he revealed during cross-examination (R. 4-490-91); the prosecutor asked McWaine on cross-examination whether it would surprise him "if I told you that Ms. Brown [McWaine's girlfriend] told me that she's addicted to crack cocaine, that she used it, got it from you, and sold it for you", while no other evidence was introduced of her statement (R. 4-509); in going through a list of names of persons to whom witnesses testified that McWaine sold drugs, the prosecutor listed

2

four names not presented to the jury elsewhere (R. 4-501); the prosecutor supplied details about the guns that were not otherwise introduced into evidence (for example, during closing arguments referring to one of the guns as "silver-plated", when this description was not mentioned at any other time during the trial (R. 5-590)); the prosecutor referred to threats McWaine had made against IRS Criminal Investigation Division Agent Bostick with no other evidence introduced on this point (R. 4-506).

Even if all of the comments made by the prosecutor were improper, we must first look to whether McWaine objected to the prosecutor's remarks in order to determine the proper standard of review. With the exception of the prosecutor's question regarding defendant's alleged threats against Agent Bostick, defense counsel made no objection at trial to any of the comments listed above. In order to warrant a new trial for comments to which McWaine failed to enter an objection, appellant must show "plain error". United States v. Andrews, 22 F. 3d 1328, 1341 (5th Cir. 1994).[2] This requires McWaine to show: "1) an error; 2) that is clear or plain; 3) that affects the defendant's substantial rights; and 4) seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Meshack, 225 F. 3d 556, 575 (5th Cir. 2000). "Plain error may be recognized only if the error is so obvious that our failure to notice it would seriously

---

[2]We reject defendant's argument that the district court's adverse ruling on the threat objection made it futile to object to the other alleged trial errors; the other errors are not sufficiently similar to establish futility.

3

affect the fairness, integrity, or public reputation of the judicial proceedings and result in a miscarriage of justice." Andrews, 22 F. 3d at 1341; see also United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776 (1993). The misconduct must cast serious doubt upon the correctness of the jury verdict. United States v. Carter, 953 F. 2d 1449, 1457 (5th Cir. 1992). Finally, the "decision to correct the forfeited error [lies] within the sound discretion of the court of appeals..." Olano, 507 U.S. at 732, 113 S.Ct. at 1776.

In assessing error based on prosecutorial misconduct we consider the following factors: "1) the magnitude of the statement's prejudice, 2) the effect of any cautionary instructions given, and 3) the strength of the evidence of defendant's guilt." United States v. Tomblin, 46 F. 3d 1369, 1389 (5th Cir. 1995).

It is not clear that the trial court's failure to respond to the prosecutor's comments was obviously erroneous. Even if it were, we conclude that any such "error" did not affect McWaine's substantial rights. As detailed in Section I of this opinion, the government presented overwhelming proof of McWaine's guilt. The trial judge also carefully instructed the jury at least twice that a lawyer's statements are not evidence and to consider only the evidence introduced. No new trial is warranted for these statements by the prosecutor.

McWaine also argues that the district court erred in allowing the testimony of Agent Sullivan stating that McWaine was in "possession" of guns when police entered his trailer. R. 3-229.

4

McWaine argues that it would have been permissible for Sullivan to testify regarding McWaine's supposed dominion and control over the guns and to explain what facts he observed that led him to this conclusion; however, appellant contends that allowing testimony on "possession", a legal conclusion, was plain error. Again, McWaine failed to object to this testimony. He therefore faces the same problem as above - demonstrating that the error probably altered the outcome of the trial. For the same reasons noted above, it is clear to us that this testimony would not have changed the outcome of this trial given the overwhelming evidence presented against McWaine. Even if the district court did err in allowing this testimony - which is doubtful - appellant is not entitled to a new trial because the "error" did not affect the outcome of the trial.

Defense counsel did object at trial to the prosecutor's question regarding a threat defendant allegedly made against Agent Bostick. This argument is based on one question by the prosecutor during cross-examination of McWaine, asking "you have threatened the case agent in this case, Harry Bostick, haven't you?" R. 4-506. Defendant did not answer the question directly, however, stating only "well, that's what y'all say." R. 4-506. Defense counsel then objected to the question for lack of foundation; this objection was overruled by the district court. The prosecutor did not pursue a further answer after the objection was overruled nor did he mention the alleged threat again during the trial.

We review the district judge's denial of a motion for new trial for abuse of discretion. <u>Whitehead v. Food Max of Miss.</u>, 163

5

F. 3d 265, 270 n.2 (1998).  We are unable to conclude from the brief reference to the threat and McWaine's non-denial of its occurrence that the prosecutor had no good faith belief in a factual basis for the question.  The district court did not abuse its discretion in denying McWaine's motion for new trial.

III.

Next, appellant argues that the district court erred in refusing to suppress evidence obtained in a search of his residence.  McWaine argues that in seeking the search warrant, Agent Sullivan relied on an untested supposed co-conspirator in the drug trade who told him that marijuana was present in defendant's trailer.  McWaine argues that no probable cause can exist without some confirmation of such an informant.

For years, the Fourth Amendment analysis of probable cause based on the tips of anonymous informants was based on the two-pronged analysis under Aquilar and Spinelli: 1) an affiant was required to establish to the satisfaction of a neutral and detached magistrate that his confidential informant was either a credible person or that his information was reliable, and 2) that the informant's basis of knowledge was firsthand.  The reliability prong could be satisfied by establishing the informant's track record for credibility or by corroborating the informant's tip in order to show that his information was reliable.[3]  The Supreme Court has since abandoned this two-pronged analysis in favor of a

---

[3]See Aquilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584 (1969).

"totality of the circumstances" test.  The requirements above are now merely factors to be used in determining whether there was probable cause for a search.  Illinois v. Gates, 462 U.S. 213 (1983).

In our case, Lily Brown, the informant, came to police and made a statement against her penal interest that she had been involved in the drug trade with McWaine.  R. 2-100.  This tip confirmed what police knew from surveillance videos and other investigation of McWaine during the previous three years.  R. 3-201.  It is clear that the district court did not err in refusing to suppress the  physical evidence seized in the search of defendant's residence, as there was probable cause for the warrant to issue.[4]

IV.

Finally, McWaine argues that this Circuit's recent case-law interpreting Apprendi[5] requires that his sentence be vacated because drug quantity was not specified in his indictment or submitted to the jury for determination beyond a reasonable doubt.  McWaine contests only the sentence he received on count 1 of the indictment - life imprisonment for cocaine conspiracy.  The indictment did not specify drug quantity on this count, but merely

---

[4]We agree with the Third Circuit that the Supreme Court's decision in Florida v. J.L., 120 S.Ct. 1375 (2000), should be read narrowly to allow an anonymous tip to support probable cause where officers can assess the informant's credibility one-on-one and have an opportunity to find the informant should the tip not pan out. See United States v. Valentine, 232 F. 3d 350, 355 (3rd Cir. 2000).

[5]Apprendi v. New Jersey, 120 S.Ct. 2348 (2000).

7

stated that McWaine conspired to distribute a "detectable amount" of cocaine.  McWaine was sentenced to life imprisonment on count 1 under 21 U.S.C. § 841(b)(1)(A) which authorizes a life sentence where a defendant possesses five kilograms or more "of a mixture or substance containing a detectable amount of...cocaine."  McWaine argues that since he was subjected to increased penalties based on drug quantity, that quantity should have been alleged in the indictment and submitted to the jury for determination beyond a reasonable doubt.  This position is supported by our cases interpreting Apprendi.

In United States v. Doggett, 230 F. 3d 160 (5th Cir. 2000), this Court held that the statute under which McWaine was convicted

> [C]learly calls for a factual determination regarding the quantity of the controlled substance, and that factual determination significantly increases the maximum penalty from 20 years under § 841(b)(1)(C) to life imprisonment under § 841(b)(1)(A).  Therefore, we hold that if the government seeks enhanced penalties based on the amount of drugs under 21 U.S.C. § 841(b)(1)(A) or (B), the quantity must be stated in the indictment and submitted to the jury for a finding of proof beyond a reasonable doubt.

Id. at 164-65.

We recently addressed the same issue in United States v. Meshack, 225 F. 3d 556, 577-58 (5th Cir. 2000), where Meshack was charged with both conspiracy to possess crack cocaine and crack possession.  Drug quantity was neither alleged in the indictment nor submitted to the jury for determination.  Meshack received a life sentence on each count, in excess of the maximum statutory sentence he could have received under 21 U.S.C. § 841(b)(1)(C),

8

which controls where drug quantity is not at issue. We held that

> [P]lain error analysis...does not allow us to uphold Meshack's life sentences because those sentences are longer, at least in theory, than his unchallenged concurrent sentence of 360 months for a different crack cocaine possession count. Thus, in light of the government's concession that Apprendi applies, we must vacate Meshack's two life sentences and remand to the district court for appropriate proceedings.

Id. at 578.

Here, McWaine received a life sentence for the cocaine offense. His next highest sentence is twenty years. Since his sentences are to run concurrently, the life sentence will affect the time he must serve in prison and we cannot rely on the plain error analysis to affirm this sentence. Id. at 577-78 (5th Cir. 2000). As in Meshack, the failure of the government to allege drug quantity in the indictment and the court's failure to submit this issue to the jury for determination requires us to vacate McWaine's sentence and remand to the district court for resentencing pursuant to 21 U.S.C. § 841(b)(1)(C).

V.

For the above reasons, we AFFIRM McWaine's convictions, but VACATE his sentence and REMAND to the district court for further proceedings consistent with this opinion.

9