**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-60464

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MICHAEL JEFFERSON,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Mississippi
July 16, 2001

Before EMILIO M. GARZA and PARKER, Circuit Judges, and HINOJOSA, District Judge.[*]

ROBERT M. PARKER, Circuit Judge:

Michael Jefferson was tried and convicted by a jury in the United States District Court for the Southern District of Mississippi for committing the offense of aiding and abetting and carjacking in violation of 18 U.S.C. §§ 2 and 2119. Jefferson

---

[*] District Judge of the Southern District of Texas, sitting by designation.

1

received a sentence of 168 months imprisonment, a three year term of supervised release, restitution of $2,865 and a $100 special assessment. He now appeals that conviction and sentence. For the reasons below, we AFFIRM Jefferson's conviction and sentence.

### FACTS AND PROCEDURAL HISTORY

On February 27, 1999, Jefferson and Cornell Campbell approached Leonard Miller, a security guard at the DeVille Apartments where Jefferson and Campbell lived, about purchasing for $300 Miller's .357 revolver, which was then in the possession of Miller's brother at another apartment complex. Jefferson and Miller did not come to an agreement on the purchase. Nevertheless, Miller requested Jefferson to take Miller's car and go retrieve the handgun from his brother as Miller could not leave his guard booth to go get the handgun.

After retrieving the handgun, Jefferson and Campbell drove to the Metrocenter Mall in Jackson, Mississippi, where Dorothy Touchberry sat alone in a rented green 1998 Subaru car parked in front of Dillards department store. While Touchberry waited on her granddaughter to return from inside the mall, a single individual jerked open the car door, grabbed Touchberry by the hair and put a gun in her face. Touchberry wrestled with the assailant and managed to get out of the car for a moment, only to be subsequently struck on the back of the head and forced back into the vehicle. Touchberry then feigned being knocked out while she quietly tried

2

to locate the door handle. Upon finding the handle, Touchberry proceeded to open the door and jumped out of the moving vehicle as the assailant, followed by Miller's car, fled in the green Subaru containing Touchberry's purse and other personal effects.

While making their get away, the driver of Miller's car lost control on a wet road as he approached a stop light and collided into the back of the green 1998 Subaru causing extensive damage to the rear of the Subaru and the front of Miller's car. The driver then abandoned Miller's car at the intersection where police later recovered it. In the days following the carjacking, someone used Touchberry's credit cards to purchase two video cameras, other electronic equipment, and miscellaneous items.

On March 3, 1999, police arrested Jefferson inside the Union Planter's Bank as he attempted to obtain money from Touchberry's account. At the time of arrest, Jefferson possessed one of Touchberry's checks made payable to Michael Jefferson in the amount of $700. Additionally, police arrested Campbell as he sat in the passenger seat of a damaged green 1998 Subaru parked outside the bank in the drive through lane. Inside the Subaru police found two video cameras, a credit card receipt on Touchberry's account for the video cameras, Miller's .357 revolver, and other items.

Campbell testified that Jefferson actually committed the carjacking offense and that he, Campbell, only watched and drove Miller's car from the mall. Touchberry testified that she did not recognize Jefferson as being her attacker but did identify

3

Campbell, from a video tape made by Jefferson and Campbell and left in one of the video cameras in the Subaru.

While delivering the verdict, the jury foreperson stated that the jury had reached a unanimous decision. The jury foreperson then passed the verdict form to the court security officer at which time the Clerk read aloud the form of the verdict finding Jefferson guilty as charged by a unanimous decision. The court then proceeded to poll each juror, "whether this is your verdict", whereupon all twelve jurors answered affirmatively. Then, the following exchange took place:

UNIDENTIFIED JUROR: I said guilty, but I do – I have reservations.

THE COURT: Is this your verdict?

UNIDENTIFIED JUROR: (Juror nods head in affirmative response.)

THE COURT: It is unanimous. The jury has found the defendant guilty as charged.

Jefferson argues on appeal that 1) the verdict of the jury was not unanimous, 2) the sentence was erroneously enhanced by a finding that the victim was abducted, 3) the government was erroneously allowed to make a Golden Rule argument during closing, 4) that he, Jefferson, was entitled to an adjustment in sentencing for acceptance of responsibility, 5)that the sentence was erroneously enhanced by a finding that a gun was "otherwise used" as defined in U.S.S.G. § 2B3.1(b)(2)(B), 6)that the sentence was erroneously enhanced by a finding that the victim received bodily injury as defined in U.S.S.G. § 2B3.1(b)(3)(A), 7) the government

4

was erroneously allowed to argue that its evidence was undisputed and to otherwise comment on the fact that he, Jefferson, did not testify, and 8)the conviction was not adequately and sufficiently supported by the weight of the evidence.

**UNANIMITY OF THE VERDICT**

Jefferson argues that a juror's expression of reservations concerning her verdict during the polling of the jury indicated a lack of unanimity and the subsequent questioning employed by the trial judge was in violation of FED.R.CRIM.P. 31. Furthermore, Jefferson argues that the court erred in denying his motion for new trial on the grounds that the jury's verdict was not unanimous. We review these claims for abuse of discretion. *United States v. Asibor*, 109 F.3d 1023 (5th Cir. 1997); *United States v. McWain*, 243 F.3d 871 (5th Cir. 2001).

In pertinent part, FED.R.CRIM.P. 31 states:

(a) Return. The verdict shall be unanimous. It shall be returned by the jury to the judge in open court.

(d) Poll of Jury. After a verdict is returned but before the jury is discharged, the court shall, on a party's request, or may on its own motion, poll the jurors individually. If the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury.

The purpose of a jury poll

5

"is to give each juror an opportunity, before theverdict [sic] is recorded, to declare in open court his assent to the verdict which the foreman has returned and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he had not fully assented."

*United States v. Sexton*, 456 F.2d 961, 966 (5th Cir. 1972) (citations omitted).

In the instant case, the jury deliberated for more than three hours before the jury foreperson announced that they had reached a unanimous decision. The form of the verdict, signed by all twelve members of the jury was read aloud in open court. "We the jury find the defendant, Michael Jefferson, guilty as charged. So say we all . . . ." Upon its own motion, the court then polled all twelve members of the jury individually, "whether this is your verdict" to which all twelve jurors answered affirmatively. Only after this did a juror indicate that she had voted guilty but had reservations. Upon hearing the juror express that she had reservations, the court inquired of the juror, "[i]s this your verdict?" whereupon the juror nodded her head affirmatively. The court then received, announced and recorded the verdict.

Jefferson argues that the trial judge's questioning of a juror subsequent to the polling was an abuse of discretion in violation

6

of FED.R.CRIM.P. 31(d) as the expression of reservations by the juror indicated a lack of unanimity and therefore, the trial judge's only options were to direct the jury to deliberate further or declare a mistrial and discharge the jury. In support of this contention, Jefferson cites a litany of cases where a verdict has been found to lack unanimity due to inconsistencies between verdicts rendered by individual jurors and statements made during a jury polling. *Cook v. United States*, 379 F.2d 966 (5th Cir. 1967); *United States v. Deerman*, 837 F.2d 684 (5th Cir. 1988); *United States v. Sexton*, 456 F.2d 961 (5th Cir. 1972); *United States v. Edwards*, 469 F.2d 1362 (5th Cir. 1972).

The instant case is distinguishable from the cases cited by Jefferson because a juror stated that she had reservations only after twice delivering a guilty verdict and then subsequently affirmed her verdict of guilty. Upon hearing the juror express reservations, the trial judge inquired as to whether the juror's verdict was truly one of guilty. The juror did not dissent, fail to vote in the deliberations, express doubt, withdraw her verdict, or do anything else that revealed a lack of unanimity. Rather, she affirmed the guilty verdict.

Prior to deliberations, the jury was given instructions concerning the standard of beyond a reasonable doubt. While a juror's expression of reservations may indicate the need for further inquiry to ascertain with certainty that the juror assents

7

to the verdict as rendered, simply expressing reservations in conjunction with a guilty verdict, in and of itself, is not sufficient to indicate a lack of unanimity. The standard of beyond a reasonable doubt does not require a juror to find with absolutely certainty that a defendant is guilty. A juror may have reservations and still find the evidence presented to be sufficient to meet the burden established by the standard of beyond a reasonable doubt. *United States v. Antwine*, 873 F.2d 1144, 1148 (8th Cir. 1989).

"In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. *Heron v. Southern Pac. CO.*, 283 U.S. 91, 95, 51 S.Ct. 383, 384, 75 L.Ed. 857 "If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings." *Geeders v. United States*, 425 U.S. 80, 87, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592. Here, prompted by the juror's guilty verdict and expression of reservations, the trial judge's inquiry to ascertain with certainty the juror's assent to the guilty verdict was an appropriate exercise of control over the trial proceedings. The trial court correctly denied Jefferson's motion for new trial and therefore, we find no abuse of discretion.

## ABDUCTION

Jefferson asserts that the trial court erred in administering

8

a four-level sentencing increase for abduction pursuant to U.S.S.G. § 2B3.1(b)(4)A.  "We review the application of the sentencing guidelines *de novo* and the district court's findings of fact for clear error."  *United States v. Hawkins*, 87 F.3d 722, 725 (5th Cir. 1996) (citation omitted).

Jefferson argues that there was no abduction because Touchberry was not moved from one location to another but rather she got out of her vehicle, fell back into the vehicle, and then got out of the vehicle again before it moved an appreciable distance.  " 'Abducted' means that a victim was forced to accompany an offender to a different location."  *Hawkins*, 87 F.3d at 726 (citation omitted).  Interpretation of the term "a different location" is to be applied on a case by case basis to the particular facts presented and thus is flexible and susceptible of multiple interpretations.  *Hawkins*, 87 F.3d at 728-29.  Here, the assailant jerked the car door open while Touchberry was inside, grabbed Touchberry by the hair and put a gun in her face.  After wrestling with the assailant and managing to get out of the car, the assailant subsequently struck Touchberry on the back of the head and forced her back into the vehicle.  As the assailant proceeded to flee in Touchberry's car, she managed to escape from the vehicle. We find movement of Touchberry to constitute movement to "a different location" sufficient to support a finding of an abduction for purposes of sentence enhancement.

**GOLDEN RULE ARGUMENT**

Jefferson next argues that the district court erred in denying his motion for new trial based upon prejudicial remarks resulting from the government's use of a Golden Rule argument made during closing argument. We review denial of motion for a new trial based upon prejudicial remarks made by the government during closing argument for abuse of discretion. *United States v. Thomas*, 120 F.3d 564, 573-74 (5th Cir. 1997). The focus is on whether the prosecution's statement, "[i]t could have been any woman in this courtroom, any woman in this city" is sufficiently prejudicial to warrant the granting of a new trial. Even assuming that the statement violated the Golden Rule, we do not find it to be sufficiently prejudicial to warrant the granting of a new trial under all the facts and circumstances of this case. Therefore, we find no abuse of discretion in denying Jefferson's motion for new trial.

**ACCEPTANCE OF RESPONSIBILITY**

Whether the district court erred in denying Jefferson a two-level decrease in the offense level for acceptance of responsibility is reviewed under the standard of great deference. *United States v. Vital*, 68 F.3d 114, 121 (5th Cir. 1995).

In a statement made during the presentence interview, Jefferson claims to accept responsibility "for [his] participation in the crime of aiding and abetting" because he witnessed the

10

incident but did not call the police. However, Jefferson maintains that he only knew that a car was going to be stolen, he did not know that a carjacking was going to take place and he did not commit a carjacking. Furthermore, in the presentence report ("PSR"), Jefferson states, "my reason for going to trial was mainly to prove to my family that I didn't commit a carjacking." Jefferson has not admitted the conduct comprising the offense of carjacking and thus has not accepted responsibility. Therefore, we find no error on the part of the district court in denying a two-level reduction in the offense level for acceptance of responsibility.

## OTHERWISE USING A FIREARM

The trial court imposed a six-level sentencing increase pursuant to U.S.S.G. § 2B3.1(b)(2)B for 'otherwise using' a firearm. Jefferson argues that the firearm was not otherwise used but only brandished and thus the applicable sentence enhancement for brandishing a firearm is not a six-level increase but rather a five-level increase pursuant to U.S.S.G. § 2B3.1(b)(2)C. The application of the sentencing guidelines are reviewed *de novo* and the district court's findings of fact are reviewed for clear error. *United States v. Hawkins*, 87 F.3d 722, 725 (5th Cir. 1996) (citation omitted). "We have held that making threats while brandishing a firearm constitutes 'otherwise using' a firearm." *United States v. Burton*, 126 F.3d 666, 678 (5th Cir. 1997)

11

(citation omitted). Touchberry was clearly grabbed by the hair and had a gun stuck in her face. Furthermore, Jefferson's PSR indicates that the suspect told the victim "I'm going to kill you, you white ho." Here, the threat of death to Touchberry in conjunction with the brandishing of the firearm constitutes 'otherwise using' a firearm. Therefore, we find no error on the part of the district court in administering a six-level enhancement in the offense level.

**BODILY INJURY**

Jefferson complains of the two-level sentencing increase pursuant to U.S.S.G. § 2B3.1(b)(3)A, due to a finding that Touchberry received bodily injuries. Jefferson contends that the district court erred in administering a two-level sentence enhancement because there is no evidence that Touchberry received any bodily injury and alternatively, that a bodily injury enhancement is not applicable because the indictment against him did not allege any bodily injury. "We review the application of the sentencing guidelines *de novo* and the district court's findings of fact for clear error." *United States v. Hawkins*, 87 F.3d 722, 725 (5th Cir. 1996) (citation omitted).

"[I]f no relevant affidavits or other evidence is submitted to rebut the information contained in the PSR, the court is free to adopt its findings without further inquiry or explanation." *United States v. Vital*, 68 F.3d 114, 120 (5th Cir. 1995). Here, the PSR

12

indicates that Touchberry "received an injury to her head . . . described as a 'knot', in addition to cuts, scrapes, and bruises." Furthermore, it is now well settled in this circuit that "a fact used in sentencing that does not increase a penalty beyond the statutory maximum need not be alleged in the indictment and prove[n] to a jury beyond a reasonable doubt." *United States v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000). Here, bodily injury (as opposed to serious bodily injury) is not an element of the crime of carjacking under 18 U.S.C. § 2119, but rather a fact used in determining the appropriate sentence. Jefferson's total offense level including the sentencing enhancement for bodily injury pursuant to U.S.S.G. § 2B3.1(b)(3)(A) was 34 with a criminal history category of 2 and resulted in a sentence of 168 months. Jefferson's sentence is below the statutory maximum of 180 months applicable to 18 U.S.C. § 2119. Therefore, we find no error in the district court's administration of a sentence enhancement for bodily injury pursuant to U.S.S.G. § 2B3.1(b)(3)(A).

### UNDISPUTED EVIDENCE AND FAILURE TO TESTIFY

Jefferson next asserts that the district court erred in denying his motion for new trial based upon prejudicial remarks made during closing argument by the government concerning the government's undisputed evidence and Jefferson's failure to testify. We review denial of motion for a new trial based upon prejudicial remarks made by the government during closing argument

13

for abuse of discretion. *United States v. Thomas*, 120 F.3d 564, 573-74 (5th Cir. 1997).

Specifically, Jefferson points to the prosecution's statements such as it's not disputed that two people were at the mall at the time of the carjacking, it's not disputed that Jefferson drove around Greenville in the stolen car that was carjacked, and its not disputed that Jefferson took Touchberry's checks to the bank to cash them. Jefferson argues that these statements were designed to point out to the jury that Jefferson did not take the witness stand to defend himself and thus are prejudicial. "While it is improper to comment upon the failure of a defendant to take the stand, it is well established that one may point out that the testimony of witnesses is uncontradicted." *United States v. Jennings*, 527 F.2d 862, 871 (5th Cir. 1976) (citation omitted). To determine if a statement was improper we must determine "whether or not the statement was manifestly intended or was of such character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Jennings*, 527 F.2d at 871 (citation omitted).

"[C]ommenting on the absence of specific evidence in the record does not constitute a comment on the defendant's failure to testify when witnesses other than the defendant could have testified to such information." *United States v. Morrow*, 177 F.3d 272, 300 (5th Cir. 1999) (citation omitted). Jefferson fails to

14

persuade us that the comments made by the prosecutor in the instant case were "manifestly intended" or were of such character that a jury "naturally and necessarily" took them as comments on the failure of Jefferson to testify.  We find no abuse of discretion on the part of the district court.

After reviewing Jefferson's last contention concerning the lack of sufficiency of the evidence, we find it to be without merit and find the evidence sufficient to sustain the conviction and sentencing.

## CONCLUSION

For the reasons discussed above, the judgment and sentence of the district court is affirmed.

AFFIRMED.