# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 26, 2012

Lyle W. Cayce
Clerk

No. 11-40782
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

HARRY L. KELLEY,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:10-CR-87-1

Before BENAVIDES, STEWART, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Harry L. Kelley was convicted by a jury of one count of possession of stolen ammunition (Count 21); one count of conspiracy to commit mail fraud with respect to obtaining training pistols manufactured by Glock, Inc. (Glock) (Count 22); and one count of conspiracy to commit mail fraud with respect to obtaining laser sights from Insight Technology, Inc. (Insight) (Count 23). The jury acquitted him of 20 counts of possession of stolen firearms. The district court sentenced him to concurrent terms of 12 months and one day. Kelley now

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

appeals, arguing (1) that the evidence was insufficient to show that he conspired to commit mail fraud with respect to the Glock pistols; (2) that the evidence was insufficient to show that he conspired to commit mail fraud with respect to the laser sights; (3) that the district court erred by giving an instruction on aiding and abetting; and (4) that the prosecutor made an improper comment on Kelley's failure to testify. Finding no error, we affirm.

Kelley contends that the evidence failed to show (1) a specific intent to defraud, and (2) an agreement to commit mail fraud, as required to show conspiracy to commit mail fraud. See United States v. Mann, 493 F.3d 484, 492 (5th Cir. 2007) (elements of conspiracy); United States v. Bieganowski, 313 F.3d 264, 275 (5th Cir. 2002) (elements of mail fraud). We view the "evidence and inferences that may be drawn from it in the light most favorable to the verdict" and determine whether "a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." United States v. Valdez, 453 F.3d 252, 256 (5th Cir. 2006) (internal quotation marks and citation omitted).

There was ample evidence on this point. Testimony showed that Kelley agreed to help Gary Lee, who owned a sporting goods business, obtain the Glock training pistols and the Insight laser sights because the companies restricted sales to law enforcement agencies and Lee could not otherwise obtain them. Kelley, who was then an officer with the Cleveland Police Department (CPD), submitted a purchase order to Glock in the name of the CPD and a cashier's check listing the CPD as remitter, along with a tax-exemption certificate certifying that the purchase was on behalf of a governmental agency and listing that agency as the CPD. Lee provided him with cash for the purchase. When the pistols were delivered to Kelley at the CPD, he delivered them to Lee.

As for the laser sights, Kelley, then in his capacity as a Liberty County Deputy Sheriff, signed an agreement required by Insight providing that the sights were restricted for purchase by military, law enforcement, or governmental agencies and could not be transferred to individual law

enforcement or civilian users. The sights were shipped to Kelley at the sheriff's office, and he delivered them to Lee.

Kelley's argument that there was no evidence that it was unlawful to own the pistols or sights misses the point. The question is whether Kelley and Lee entered into a scheme to defraud another using the mails. There was ample evidence from which the jury could infer that Kelley agreed with Lee to falsely represent that Kelley was purchasing the Glock pistols on behalf of the CPD, and that he was purchasing the laser sights on behalf of the Liberty County Sheriff's Department, in order to circumvent the restrictions Glock and Insight placed on sales to non-law enforcement personnel. The sellers testified they would not have sold their property if the purchase agreements had been truthful. The jury's choice between reasonable views of the evidence is entitled to deference. See United States v. Seale, 600 F.3d 473, 496 (5th Cir.), cert. denied, 131 S. Ct. 163 (2010).

Kelley relatedly argues that because Glock and Insight were paid, they suffered no harm to their property within the meaning of the mail fraud statute. Although couched in terms of sufficiency, Kelley's challenge raises a legal argument. See United States v. Loney, 959 F.2d 1332, 1334-35 (5th Cir. 1992). As Kelley did not make this legal argument in the district court, we review it for plain error. See United States v. Treft, 447 F.3d 421, 424-25 (5th Cir. 2006).

The Government need not prove monetary loss in a mail fraud prosecution. United States v. McMillan, 600 F.3d 434, 450 (5th Cir.), cert denied, 131 S. Ct. 504 (2010). In addition, although we have not confronted whether a scheme to induce someone by false representations to sell a product that he otherwise would not have sold constitutes a harm to property rights, other circuits have done so, with differing results. Compare United States v. Schwartz, 924 F.2d 410, 414, 420-21 (2nd Cir. 1991) (affirming a mail fraud conviction based on false representations to a manufacturer who placed explicit restrictions on a sale of night vision goggles to ensure that they were not unlawfully exported), with

United States v. Bruchhausen, 977 F.2d 464, 467-68 (9th Cir. 1992) (holding that the right to control future disposition of goods sold was not a property right within the meaning of the wire fraud statute in a case in which the defendants falsely represented to a manufacturer that goods would remain in the United States). Given the foregoing state of the law, and that no motion to dismiss, nor challenge to the mail fraud instructions was submitted, any error was not clear or obvious for purposes of plain error review. See United States v. Salinas, 480 F.3d 750, 759 (5th Cir. 2007).

Kelley also argues that the district court erred by giving an aiding and abetting instruction with respect to Count 21, because Lee was unaware that the ammunition was stolen. Thus, he could not have aided and abetted Lee. As any error was harmless, we do not reach whether there was error.

Lee testified that Kelley approached him with a deal to trade guns for ammunition that Kelley said he obtained from the federal government. Agents from Immigrations and Customs Enforcement (ICE) provided Kelley with thousands of rounds of .40 caliber ammunition every month in exchange for using the CPD firing range. Former CPD Assistant Chief Henry Patterson testified that such an exchange was never discussed with ICE, and he was unaware that Kelley was receiving the ammunition. Kelley supplied Lee with 80,000 rounds over the course of their arrangement, and Kelley received 86 guns from Lee in return. Customers who purchased guns from Kelley were given cases of .40 caliber ammunition at little or no cost. Samples of ammunition provided to Kelley's customers were identified as having been manufactured for and sent to ICE. Given the ample evidence that Kelley was guilty as a principal of possession of stolen ammunition, any error was harmless. See United States v. Laury, 985 F.2d 1293, 1300-01 (5th Cir. 1993).

Finally, Kelley argues that the prosecutor improperly commented on his right not to testify when, during closing arguments, the prosecutor told the jury that Kelley was greedy, "and that greedy man who betrayed the public trust sits

there. You have heard uncontradicted and unrebutted evidence from the [G]overnment." Although the prosecution may not "comment upon the failure of a defendant to take the stand, it is well established that one may point out that the testimony of witnesses is uncontradicted." United States v. Jefferson, 258 F.3d 405, 414 (5th Cir. 2001). The ultimate question is whether the comment "was manifestly intended or was of such character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Id. (internal quotation marks and citation omitted).

We need not decide whether the remark was improper because we are satisfied that the remark did not have a "clear effect on the jury." McMillan, 600 F.3d at 452 (5th Cir.) (internal quotation marks and citation omitted). The district court gave an immediate curative instruction, telling the jury that Kelley had no duty to testify or to put on evidence, thus mitigating any harm. See id. at 453. The acquittal on 20 counts indicates that the jury was not influenced by the remark and followed the court's instruction. See id. Finally, the evidence of Kelley's guilt was strong, further demonstrating the harmlessness of any error. See United States v. Johnston, 127 F.3d 380, 398 (5th Cir. 1997).

For the foregoing reasons, the judgment of the district court is AFFIRMED.