******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

MOLL, J., dissenting. The crux of this appeal involves the right of the defendant, Angel A.—having just been found guilty of, inter alia, attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a (for which he subsequently received a consecutive sentence of twenty years of incarceration)—to have the jury polled pursuant to Practice Book § 42-31,[1] which, "although not of constitutional dimension, is nonetheless a corollary to the defendant's right to a unanimous verdict." (Internal quotation marks omitted.) *State* v. *Pare*, 253 Conn. 611, 623, 755 A.2d 180 (2000). Our Supreme Court has held that, in a criminal case, a trial court's failure to conduct a jury poll following a timely request constitutes structural error[2] not subject to harmless error review.[3] See id., 635–39. In the present case, one juror, C.A., purportedly told the trial judge in the jury deliberation room—after the return of the verdict but before the jury had been discharged—that she "[felt] a little guilty about the attempted murder charge."[4] The court did not advise

---

[1] Practice Book § 42-31 provides: "After a verdict has been returned and before the jury has been discharged, the jury shall be polled at the request of any party or upon the judicial authority's own motion. The poll shall be conducted by the clerk of the court *by asking each juror individually whether the verdict announced is such juror's verdict.* If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or it may be discharged." (Emphasis added.)

[2] A structural error is "a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. . . . Such errors infect the entire trial process . . . ." (Internal quotation marks omitted.) *State* v. *Lopez*, 271 Conn. 724, 733, 859 A.2d 898 (2004).

[3] In contrast, in a civil case, a violation of Practice Book § 16-32—the civil counterpart of Practice Book § 42-31—is subject to harmless error review. See *Wiseman* v. *Armstrong*, 295 Conn. 94, 115, 989 A.2d 1027 (2010).

[4] It does not appear from the December 5, 2018 transcript (the date of the verdict and the discharge of the jury) that the trial judge informed counsel that she intended to speak with the jurors following their exit from the courtroom. See *Tessmann* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 57, 634 A.2d 870 (1993) ("[a]nswering jurors' questions, to promote good public relations, and soliciting feedback regarding the performance of members of the bar are within the court's administrative functions and are permissible under [the rule of the Code of Judicial Conduct governing ex

counsel of C.A.'s statement prior to the jury's separation and dispersal.

In my view, it is inconceivable that, had he immediately been informed of C.A.'s statement, defense counsel would not have made a polling request prior to the jury's discharge (i.e., at a time when such request would have been deemed timely as a matter of law pursuant to *State* v. *Pare*, supra, 253 Conn. 611, and when the court would have been *required* to conduct a poll). See id., 621 ("We conclude that, pursuant to [Practice Book] § 42-31, a trial court's obligation to poll the jury upon a timely request from either party is mandatory. We conclude further that a jury is not discharged for the purpose of § 42-31 until its individual members separate or disperse and, therefore, a request submitted prior thereto is timely."). Because I see no meaningful difference between a trial court's per se reversible denial of a request to conduct a jury poll following a timely request, as in *Pare*, and a trial court's withholding of information that otherwise would have prompted a timely request for a jury poll, as in the present case, I respectfully dissent from part I of the majority opinion and would reverse the judgment of conviction of attempt to commit murder and remand the case for a new trial on that count.[5]

As a threshold matter, I disagree with the majority's analysis in part I concerning the issue of preservation of the defendant's first claim on appeal. Unlike the majority, I would deem the defendant's claim preserved.[6]

---

parte communications] *as long as the judge fully discloses* [*her*] *intention to speak with the jury and discloses the subject matter to be discussed*" (emphasis added)). The defendant does not raise this issue on appeal.

[5] As the majority correctly notes, on appeal, the defendant seeks a reversal of the judgment of conviction only as to the count of attempt to commit murder.

[6] The majority concludes that the defendant did not preserve his Practice Book § 42-31 claim because he did not raise it (1) during the posttrial hearing or (2) in a motion for a new trial. With regard to the former (i.e., that the

Practice Book § 60-5 provides in relevant part that this court "shall not be bound to consider a claim unless it was distinctly raised at the trial *or arose subsequent to the trial. . . .*" (Emphasis added.) See *Weiss* v. *Smulders*, 313 Conn. 227, 247–48, 96 A.3d 1175 (2014) (because issue arose subsequent to trial, claim on appeal was deemed preserved); *Azia* v. *DiLascia*, 64 Conn. App. 540, 558–59 n.13, 780 A.2d 992 (same), cert. denied, 258 Conn. 914, 782 A.2d 1241 (2001); *Hayward* v. *Hayward*, 53 Conn. App. 1, 5–6, 752 A.2d 1087 (1999) (same).

Here, the issue of C.A.'s equivocation as to the verdict arose—from the perspective of the parties' knowledge—subsequent to the trial (more specifically, after

defendant did not raise this claim during the posttrial hearing), by the time of that hearing, a request for an individual poll under Practice Book § 42-31 would have been too late as a matter of law, through no fault of the defendant. See *State* v. *Pare*, supra, 253 Conn. 632–33. With regard to the latter (i.e., that the defendant did not raise the issue in a motion for a new trial), the majority cites *State* v. *Franklin*, 162 Conn. App. 78, 93, 129 A.3d 770 (2015), cert. denied, 321 Conn. 905, 138 A.3d 281 (2016). I believe that the majority's reliance on *Franklin* is misplaced. In *Franklin*, this court opined that, because the defendant had not moved for a new trial under Practice Book § 42-53, he had not preserved his claim that he was entitled to a new trial on the ground that the verdicts were against the weight of the physical evidence. See id. In light of the nature of that particular claim, such a preservation requirement makes sense. With regard to such a claim, "[i]t is well settled that *only the judge who presided over the trial* where a challenged verdict was returned is legally competent to decide if that verdict was against the weight of the evidence . . . . Consequently, *a judge in a later proceeding, such as a direct appeal* or a habeas corpus proceeding, *is not legally competent* to decide such a claim on the basis of the cold printed record before it. . . . It necessarily follows that appellate review of a weight of the evidence claim is greatly circumscribed. . . . [T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict and a motion for a new trial is the abuse of discretion standard." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Capasso*, 203 Conn. App. 333, 346–47, 248 A.3d 58, cert. denied, 336 Conn. 939, 249 A.3d 352 (2021). However, to extend, as the majority does, the preservation requirement applicable to a weight of the evidence claim to a jury polling claim that arises subsequent to the trial is a bridge too far.

the return of the verdict and after the discharge of the jury). That is, by the time the court informed counsel of C.A.'s statement (i.e., two days after the jury's discharge), it was too late, as a matter of law, for counsel to make a polling request under Practice Book § 42-31. In *Pare*, our Supreme Court stated: "For practical reasons . . . a trial court should be [and is] required to reassemble a jury and conduct a poll only prior to the separation and dispersal of its members. 'The reason usually given why it is too late to poll jurors after they have been dispersed is that they may have "come into contact with outside influences." 3 ABA Standards for Criminal Justice at 15-148.' *State* v. *Coulthard*, [171 Wis. 2d 573, 582, 492 N.W.2d 329 (1992), review denied, 497 N.W.2d 130 (1993)]; see also *People* v. *McNeeley*, 216 Ill. App. 3d 647, 652, 575 N.E.2d 926, appeal denied, 141 Ill. 2d 553, 580 N.E.2d 128 (1991) ('protective shield' removed upon discharge thereby 'allowing the jurors to be influenced by improper outside factors'). Even '[s]imple questions such as "[d]id we do alright?" or "[w]e did the right thing, didn't we?"—responded to either positively or negatively would taint any subsequent poll.' *United States* v. *Marinari*, [32 F.3d 1209], 1214 [(7th Cir. 1994)]. Until that time, however, it can be assumed, in the absence of any indication to the contrary, that the deliberative process had not been tainted and, therefore, that the results of a jury poll will provide adequate confirmation as to whether the verdict was reached upon full consensus of the jurors." *State* v. *Pare*, supra, 253 Conn. 632–33. In light of the foregoing, and pursuant to Practice Book § 60-5, I would deem the defendant's claim preserved.

Having determined that the defendant's Practice Book § 42-31 claim is unpreserved, however, the majority proceeds to conclude that the claim fails under the third prong of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn.

773, 781, 120 A.3d 1188 (2015). Respectfully, I disagree with the majority's application of *Golding*. It is well settled that, in order for a defendant to prevail on a claim pursuant to *Golding*, all of *Golding*'s conditions must be satisfied. See, e.g., *State* v. *Bolton*, 352 Conn. 477, 494 n.14, 337 A.3d 1114 (2025). With respect to the second *Golding* prong (i.e., "the claim is of constitutional magnitude alleging the violation of a fundamental right"; *State* v. *Golding*, supra, 239), the majority effectively assumes it is satisfied, notwithstanding the fact that our Supreme Court has expressly held, however, that the right to poll the jury under § 42-31 is "not of constitutional dimension . . . ." *State* v. *Pare*, supra, 253 Conn. 623. Indeed, our Supreme Court recently held that a claim of a § 42-31 violation "is not subject to *Golding* review," stating that, because a defendant's claim that the trial court violated § 42-31 "is not of constitutional magnitude, it fails to satisfy the second prong of *Golding*." *State* v. *Bolton*, supra, 499. In addition, this court previously rejected the availability of *Golding* review of a § 42-31 claim for that very reason. See *State* v. *Mazzeo*, 74 Conn. App. 430, 438, 811 A.2d 775 ("[T]he defendant's claim fails because it is not of constitutional magnitude alleging a violation of a fundamental right. . . . As such, review under *Golding* is denied." (Citation omitted.)), cert. denied, 263 Conn. 910, 821 A.2d 767 (2003). Because this court follows the doctrine of horizontal stare decisis (i.e., this court's commitment to follow its own precedent),[7] and this court previously has held that *Golding* is not available on a claim under § 42-31, the majority opinion also creates an inconsistency in our case law. In sum, the

---

[7] See *A Better Way Wholesale Autos, Inc.* v. *Saint Paul*, 192 Conn. App. 245, 260 n.10, 217 A.3d 996 (2019) ("[T]his court's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.)), aff'd, 338 Conn. 651, 258 A.3d 1244 (2021).

majority's *Golding* analysis directly contravenes our Supreme Court's recent holding in *Bolton*, as well as this court's prior precedent.

The majority's treatment of a Practice Book § 42-31 claim as a constitutional claim amenable to harmless error review permeates the remainder of its analysis in part I of its opinion. The majority begins its analysis of the merits of the defendant's claim by relying on *Rushen* v. *Spain*, 464 U.S. 114, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983), which did not involve a juror statement about the verdict but rather a juror's ex parte, midtrial communication with the trial judge concerning her recollection of the murder of a childhood friend by a police informant who was identified during a witness' testimony at the defendant's criminal trial and subsequently had been convicted of that crime. Id., 115–16. After a subsequent habeas action, the defendant in *Rushen* v. *Spain*, supra, 117, raised on appeal a constitutional claim to which the United States Supreme Court applied harmless error review. Id., 121. As stated previously, however, a claim under § 42-31 is not of constitutional magnitude, and a violation of § 42-31 results in structural error that is not subject to harmless error review. See *State* v. *Pare*, supra, 253 Conn. 635–39.

Relying on *Rushen*, the majority adopts a rule whereby a trial judge has no *immediate* obligation to disclose a juror's ex parte comment reflecting equivocation as to the verdict that is expressed after the return of the verdict but prior to the jury's discharge. According to the majority, a trial judge can wait to make the disclosure until after the jury's discharge, and any prejudicial effect can be determined in a posttrial hearing (when the ability to conduct a jury poll no longer exists). I find such a rule to be ill-advised and lacking in the proper regard for the "weighty interest protected by a jury poll"; id., 639; either done "at the request of

any party or upon the judicial authority's own motion.'' Practice Book § 42-31.

Further, I am unpersuaded by the majority's reliance on *United States* v. *Jefferson*, 258 F.3d 405 (5th Cir.), cert. denied, 534 U.S. 967, 122 S. Ct. 379, 151 L. Ed. 2d 289 (2001). Although *Jefferson* involved a juror expressing reservations about her verdict, the case is readily distinguishable because, among other things, the trial court in that case had in fact individually polled the jury members as to their guilty verdict and all twelve jurors answered affirmatively.[8] Id., 410. In the present case, the defendant obviously did not have the benefit of an individual poll.

Unpersuaded by the majority's analysis, and for the reasons that follow, I conclude that the trial court had a duty, prior to the jury's discharge, to notify counsel of C.A.'s statement reflecting her equivocation as to the verdict on the count of attempt to commit murder and that the failure to do so deprived the defendant of his right to request a jury poll under Practice Book § 42-31, thereby resulting in structural error pursuant to *State* v. *Pare*, supra, 253 Conn. 635–39.

The defendant's claim distills to the legal question of whether the trial court had a duty to inform counsel of C.A.'s statement prior to the jury's discharge and whether the failure to do so resulted in a violation of Practice Book § 42-31. '' 'The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation.' *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 733–34, 830 A.2d 228 (2003); see also *State* v. *Pare*,

---

[8] In *Jefferson*, the juror's statement of equivocation was made after the trial court had polled the jury, at which time the court asked the juror, individually again, whether that was the juror's verdict and the juror responded affirmatively. *United States* v. *Jefferson*, supra, 258 F.3d 410. The court's handling of the juror's equivocation following the jury poll was reviewed for an abuse of discretion. Id.

supra, 253 Conn. 622 ('principles of statutory construction apply "with equal force to Practice Book rules" '). The interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary. *Commissioner of Social Services* v. *Smith*, supra, 734." *Wiseman* v. *Armstrong*, 295 Conn. 94, 99, 989 A.2d 1027 (2010).

My analytical starting point is the guidance provided in *State* v. *Pare*, supra, 253 Conn. 611, in which our Supreme Court considered whether the trial court's denial of a polling request in a criminal trial constituted structural error. See id., 635–36. In *Pare*, the defendant had been charged with murder. Id., 612. During deliberations, the jury informed the court of its inability to reach a unanimous verdict, whereupon the trial court gave a "Chip Smith" charge reminding the jury that it must act unanimously.[9] Id., 616 and n.4. Shortly thereafter, the jury returned a verdict of guilty, and the court denied the defendant's subsequent request to poll the jury, made after the jury had retired to the jury room. Id., 617, 619–20. On appeal, the defendant argued that the denial of his request constituted per se reversible error. Id., 613. Our Supreme Court concluded that the "weighty interest protected by a jury poll" and constitutional concerns inherent in criminal trials required invocation of per se reversible error. Id., 639. The court explicitly stated that, "because the purpose of permitting an individual poll is to protect the accused's constitutional right to an acquittal in the absence of the full consensus of each juror, the denial of a timely request to poll is of substantial and unique magnitude. . . . [T]he action of the court [in denying a timely request

---

[9] "A Chip Smith [charge] reminds the jurors that they must act unanimously, while also encouraging a deadlocked jury to reach unanimity. . . . A similar jury instruction, known as an *Allen* charge, is utilized in the federal courts." (Citations omitted; internal quotation marks omitted.) *State* v. *O'Neil*, 261 Conn. 49, 51 n.2, 801 A.2d 730 (2002); see *Allen* v. *United States*, 164 U.S. 492, 501, 17 S. Ct. 154, 41 L. Ed. 528 (1896).

to poll the jury] work[s] a denial of a right of the accused so fundamental as to require a retrial . . . . [I]t is better that the case be tried again than that a precedent impairing a defendant's right to a poll of the jury be engrafted on our criminal procedure." (Internal quotation marks omitted.) Id., 636. The court proceeded to reject the state's contention that a Practice Book § 42-31 violation is subject to harmless error review; id., 637; instead holding that "a defendant's right to poll the jury, if not waived, is absolute, and its denial requires reversal even though the remainder of the trial may be error-free." (Internal quotation marks omitted.) Id., 638–39. The court reasoned: "Despite the jury's collective assent to the verdict, absent a poll, a defendant has no way of ensuring that his or her right to a unanimous, uncoerced verdict was honored. . . . [Although] the jury did not behave in any manner to suggest that polling would have produced a juror who did not support the verdict and thus changed the outcome of the trial, the fact remains that we cannot know the results of polling the jury. . . . [I]n the absence of a valid poll upon a timely request, we must regard the verdict as defective." (Citations omitted; internal quotation marks omitted.) Id., 637–38. The court also highlighted that "rarely does an individual poll reveal that a juror assented to a verdict despite reservation regarding the defendant's guilt beyond a reasonable doubt. . . . Nonetheless, in light of the weighty interest protected by a jury poll, and the impracticality of gauging the results of a poll not taken, [the court] conclude[d] that a violation of a party's timely polling request requires automatic reversal of the judgment." (Citation omitted.) Id., 639.

"The purpose of a jury poll is to test the uncoerced unanimity of the verdict by requiring each juror to answer for himself, thus creating individual responsibility, eliminating any uncertainty as to the verdict announced by the foreman. . . . [T]he right to poll the

jury, although not constitutional, is nonetheless a substantial right . . . that enables the court to ascertain with certainty that a unanimous verdict has in fact been recorded and that no juror has been coerced or induced to agree to a verdict to which he [or she] has not fully assented." (Citations omitted; internal quotation marks omitted.) *State* v. *Bolton*, supra, 352 Conn. 483–84; see also *State* v. *Pare*, supra, 253 Conn. 624 (Practice Book § 42-31 is "a mechanism for preserving an essential characteristic of both the state and federal constitutions; see *Burch* v. *Louisiana*, 441 U.S. 130, 138, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979) (right to unanimous verdict rendered by six person jury protected under right to jury trial guaranteed by due process clause of fourteenth amendment to United States constitution); *State* v. *Jennings*, 216 Conn. 647, 656, 583 A.2d 915 (1990) (acknowledging right to unanimous verdict protected by article first, § 8, of Connecticut constitution)").

The potential import of a jury poll is not mere fiction. For example, a jury poll in *State* v. *Bolton*, supra, 352 Conn. 477, uncovered equivocation on the part of one of the jurors. The polling was halted after six jurors had been polled, and the jury ultimately was instructed to continue deliberating. Id., 480–81. Indeed, Practice Book § 42-31 expressly provides in relevant part that, "[i]f upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or it may be discharged." Our Supreme Court in *Bolton* gave this guidance: "Depending on the circumstances before it, the court may choose to canvass the dissenting juror, to dismiss the jury and declare a mistrial, or to issue a Chip Smith charge or other instruction before returning the jury to its deliberations; it may also simply return the jury to deliberate without additional instruction." *State* v. *Bolton*, supra, 488. A trial court's handling of a juror's equivocation uncovered during a

jury poll is reviewed for an abuse of discretion. Id., 482–94.

In the present case, the trial court deprived the defendant of his right to request a jury poll with the knowledge of C.A.'s expressed equivocation as to the verdict. Indeed, had a jury poll occurred in real time and C.A. individually responded to the clerk's inquiry regarding whether the verdict announced was her verdict by stating that she "[felt] a little guilty about the attempted murder charge," there can be little doubt that the trial court would have been *required* to address C.A.'s equivocation during the poll and could not simply assume that she had returned a verdict of guilty. Cf. *State* v. *Bolton*, supra, 352 Conn. 482 n.3 ("[b]ecause the jury poll was not completed, it is unclear how the trial court determined that eleven jurors had returned a verdict of guilty"). In effect, this is what the majority does. That is, the majority states: "Because the trial court did not inquire about C.A.'s comment at the time it was made or during the posttrial hearing, any inferences we may draw about what C.A. meant would be purely speculative." Yet, that is precisely the point. We simply have no idea whether C.A. would have, in a jury poll, individually affirmed a verdict of guilty on the count of attempt to commit murder. See *State* v. *Pare*, supra, 253 Conn. 637 (*rejecting* state's argument that, "in the absence of any indication of dissent, the jury's affirmative responses as a body provides a sufficient guarantee of unanimity to render the lack of individual interrogation harmless").

As previously stated, it is inconceivable to me that defense counsel would not have requested a jury poll upon being timely informed of C.A.'s equivocation regarding the verdict on the attempt to commit murder count. See *J.R.* v. *Commissioner of Correction*, 105 Conn. App. 827, 843, 941 A.2d 348 ("the petitioner does not argue, nor do we conclude, that defense counsel is

required in all circumstances to poll the jury, *absent some indication that the verdict was not unanimous*" (emphasis added)), cert. denied, 286 Conn. 915, 945 A.2d 976 (2008). As stated in *Pare,* "[i]n the absence of a valid poll upon a timely request, we must regard the verdict as defective." (Internal quotation marks omitted.) *State* v. *Pare,* supra, 253 Conn. 638. Under these circumstances, I conclude that the court's withholding of information that otherwise would have prompted a timely request for a jury poll resulted in structural error not subject to harmless error review. See *State* v. *Lewis,* 134 Conn. App. 262, 263, 37 A.3d 832 (2012) (reversing judgment of conviction where trial court improperly denied timely request to poll jury, made after recording of verdict and prior to jury's discharge); *State* v. *James P.,* 96 Conn. App. 93, 102, 899 A.2d 649 ("[b]ecause the jury was not discharged, defense counsel's request to poll the jury [made after the recording of the verdict and prior to the jury's discharge] was timely, and the court's improper denial of that request requires reversal of the judgment"), cert. denied, 280 Conn. 910, 908 A.2d 540 (2006); *State* v. *Edelman,* 64 Conn. App. 480, 482–84, 780 A.2d 980 (2001) (concluding that court's denial of defendant's timely request for jury poll, made after jury had returned verdict and prior to jury's discharge, required automatic reversal of judgment), appeal dismissed, 262 Conn. 392, 815 A.2d 104 (2003).

In light of the foregoing considerations, I respectfully dissent from part I of the majority opinion.[10]

---

[10] Because my conclusion with regard to the defendant's first claim would be dispositive of the resolution of his appeal, I do not address part II of the majority opinion.